No. 759            October 30, 2024            643

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ROBERTO SANTIAGO MARTINEZ,
*Defendant-Appellant.*

Washington County Circuit Court
19CR03333; A178640

Theodore E. Sims, Judge.

Argued and submitted September 18, 2023.

David O. Ferry, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Patrick M. Ebbett, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and David B. Thompson, Assistant Attorney General.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

ORTEGA, P. J.

Reversed and remanded.

**ORTEGA, P. J.**

This case is before us for a second time on defendant's appeal from a judgment convicting him of one count of first-degree sexual abuse, ORS 163.427, after a jury found him guilty of fondling the breasts of B, a child under the age of 14. On his first appeal, we held that the trial court erred in admitting, under OEC 404(3), evidence of defendant's prior sexual abuse of a different minor victim, C, because it was propensity evidence. *State v. Martinez*, 315 Or App 48, 59, 499 P3d 856 (2021) (*Martinez I*). We reversed and remanded for "the trial court to determine 'whether, after conducting a correct analysis under OEC 404 and OEC 403, other acts evidence should again be received and whether a new trial is required or appropriate.'" *Id.* (quoting *State v. Baughman*, 361 Or 386, 410, 393 P3d 1132 (2017)).

Defendant now assigns error to the trial court's ruling on remand to again admit the evidence of defendant's prior sexual abuse of C, this time under OEC 404(4) and after conducting OEC 403 balancing.[1] Applying the framework set forth in *State v. Davis*, 372 Or 618, 553 P3d 1017 (2024) (*Davis III*), we conclude that the trial court abused its discretion in admitting the evidence because, viewed *in toto*, its probative value was substantially derived from character and character-based propensity reasoning. We therefore reverse and remand for a new trial.

## HISTORICAL AND PROCEDURAL FACTS

In August 2017, when B was 11 years old, she stayed overnight at defendant's house to celebrate his daughter's birthday, and the two girls slept in the same bed in his daughter's bedroom. Early the next morning, defendant came into the room while the girls were still sleeping. According to B, defendant began rubbing her leg, then her stomach under her pajamas, and then groped her bare breasts for about 10 minutes while she lay there paralyzed with fear. Once the alarm went off, defendant quickly stopped, said good morning to the girls, and acted like nothing had happened. B reported the abuse to both of defendant's daughters that

---

[1] The trial court accordingly ruled that a new trial was not necessary and reentered the judgment of conviction.

morning and later to her best friend and to her mother, but B and her mother did not contact the police out of concern for defendant's daughters. Just over a year later, in September 2018, B disclosed the abuse to a school counselor and again during a CARES Northwest interview.

Defendant was arrested in September 2018 for sexually abusing a different child, C. That December, Detective Rookhuyzen interviewed defendant about B's allegations. Defendant said that he did not specifically remember B or the sleepover for his daughter's birthday and that B may have been abused by someone else or may have misinterpreted him when he touched and shook the girls to wake them up. In early 2019, a grand jury indicted defendant for one count of first-degree sexual abuse, alleging that he "did unlawfully and knowingly subject [B], a child under 14 years of age, to sexual contact by touching her breast(s)[.]"

Defendant moved pretrial to exclude, under OEC 404 and OEC 403, evidence of any prior arrests, criminal convictions, and accusations of sex abuse against him aside from the charged conduct. In response, the state sought to admit certain other-acts evidence under OEC 404(3) to prove defendant's motive and to prove that he touched B with a sexual purpose; it alternatively sought to admit the evidence under OEC 404(4).

First, the state sought to admit C's testimony that she is the daughter of defendant's cousin; that defendant began sexually abusing her when she was 11 years old and he "would come around at night and sneak into her room"; that it began with defendant "rubbing her legs and stomach over her clothes and progressed to touching her private areas, under her clothes, and later to oral, anal, and sexual intercourse"; that the abuse continued for years and culminated in C giving birth to defendant's child in October 2017 when C was 15 years old; and that defendant admitted that he was the father of C's child. Second, the state sought to introduce defendant's statement to Rookhuyzen characterizing his sexual abuse of C as a "relationship."[2]

_____

[2] The state also sought to introduce the testimony of C's older sister, F, that defendant sexually abused F multiple times between ages 7 and 15, when the family lived in Mexico and after they moved to Oregon. The trial court excluded C's testimony as "stale in time and geographically disparate and debatable."

The trial court admitted the other-acts evidence relating to C under OEC 404(3):

"THE COURT:  [T]he evidence of the abuse [of C] is undeniable. [Defendant] had a child born as a result of the type of conduct that's alleged is *** quite similar enough to do it [*sic*]. The [s]tate has an obvious need for it. I recognize that there's a fair amount of prejudice in terms of the impact the evidence is likely to have on the jury, but I don't think it's going to distract them from their ability to focus on the conduct that's alleged here.

"In other words, I'm not concerned that they're going to convict him of this absent evidence that he committed the alleged offense here because of prior incidences. I think the jury should be relatively sophisticated in that regard.

"So on a 403 balancing test, I think the probative value exceeds the prejudicial effect. And I think there is a non-propensity need for the [s]tate to have this evidence in. So unless either side wants me to get into the 404[(4)] area, I don't think I need to."

At trial, Rookhuyzen testified that defendant characterized his abuse of C as a "relationship" and, additionally, that he had questioned defendant about his "specific attraction to young girls" and "the previous case [Rookhuyzen] investigated [that] involved, you know, [defendant] impregnating a 14-year-old cousin." C testified that she was 17 years old and lived with her parents, her cousins—defendant's daughters—and her daughter, whom she had given birth to at age 15. C further testified that she was 11 or 12 years old when defendant began touching her inappropriately, that the abuse happened at defendant's house and, at times, when she and her brother were sleeping on the floor together and defendant's daughters were asleep in a bed in the same room. Finally, C testified that the abuse progressed over several years to sexual intercourse, resulting in the conception of her daughter.

Before closing arguments, the trial court instructed the jury that it could use the other-acts evidence related to C for the limited purpose of "whether that evidence demonstrates that the [d]efendant has a sexual interest in children

and whether the [d]efendant acted on the interest as to the charged offense."[3]

In closing argument, the state referred to C's testimony and the court's limiting instruction and argued that "you're not allowed to say, 'Oh, you know, he had a child with a 15-year-old, he must've done this [to B],'" and that "just because someone did it once, doesn't mean you get to say they did it this time," but instead that "you may take that evidence into consideration when you're trying to decide does that demonstrate—does he have a sexual interest in children and whether he acted on that interest in this case with [B]." In rebuttal argument, the state again referenced the evidence that defendant fathered C's child and argued that the jury could consider that evidence to determine that defendant was "a man willing to prey on a vulnerable victim he had access to, a child who – an[] 11-year-old who is stuck at his house" and that defendant "was a man who acted on his impulse, who violated this vulnerable victim." The jury found defendant guilty.

As noted, on defendant's first appeal, we held that the trial court erred in admitting, under OEC 404(3), evidence of defendant's prior sexual abuse of C, because that evidence was propensity evidence, and we reversed and remanded for the trial court to reconsider its ruling under the correct legal framework. *Martinez I*, 315 Or App at 59.

On remand, the parties submitted additional briefing on the admissibility of evidence relating to defendant's sexual abuse of C. The state argued that the evidence "speaks to [] defendant's sexual interest in children" and was relevant and admissible under OEC 404(4) as articulated in *State v. Williams*, 357 Or 1, 346 P3d 455 (2015):

---

[3] The court's limiting instruction provided in full:

"In considering the evidence in this case, you must give individual consideration to the charged offense. You must not use evidence relating to prior sexual contact with a minor for the purpose of concluding that because the [d]efendant may have sexually abused [C], he is guilty of sexually abusing [B] in this case.

"If, however, you conclude that the [d]efendant did commit a sexual crime against [C], then you may take such evidence into consideration when deciding whether that evidence demonstrates that the [d]efendant has a sexual interest in children and whether the [d]efendant acted on the interest as to the charged offense."

"If the jury inferred from the [] evidence that defendant had a sexual interest in children generally, then the jury could take defendant's interest into consideration in deciding whether defendant had acted on that interest and with that purpose on the charged occasion." *Id.* at 23. The state further argued that the court had "already engaged in the relevance and unfair prejudice analysis" under OEC 403 and had "already properly found that the evidence related to the sexual abuse of [C] is relevant under [OEC] 401 and not unduly prejudicial under [OEC] 403," "that the [s]tate's need for the evidence was high[,] and that the jury would not be unfairly prejudiced by its introduction." The state urged the court to "continue those findings and additionally find that the propensity evidence is admissible under OEC 404(4) and *Williams*[.]"

Defendant responded that the evidence should be excluded, and a new trial ordered, because the evidence "derive[s] its relevance from [] defendant's character" and should therefore "generally be inadmissible under OEC 403" as explained in *Williams*, 357 Or at 19-20. Defendant further argued that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice that inheres in admitting propensity evidence, as explained in *State v. Skillicorn*, 367 Or 464, 479 P3d 254 (2021).

The trial court ruled that the other-acts evidence relating to defendant's sexual abuse of C was relevant and admissible under OEC 404(4), that its probative value was not substantially outweighed by the danger of unfair prejudice under OEC 403, and that a new trial was not necessary:

"THE COURT: I am finding that the evidence pertaining to the activities or the actions the defendant took with regards to [v]ictim C are admissible under [OEC] 404(4). I am also completing the analysis I did under [OEC] 403, the relevancy, the probative value versus the prejudicial effect. The state's need for this evidence, since they have to prove that the touching of the victim in this case was done for a sexual purpose, the state has a high need—

"*****

"The quality of that evidence is solid because the prior touching resulted in the birth of a child with an underage

victim of that abuse. So that evidence has an exceptionally high probative value on the question of the defendant's sexual interest in children.

"And it is precisely because of the high probative value of that evidence that it logically would be prejudicial to the defendant, but that prejudice is not in any way, shape, or form outweighed by the probative value, and it is not unfair.

"So balancing the state's need for that evidence against the danger of unfair prejudice, which I find that danger to be low, the evidence offered by the state of the defendant's prior conduct with respect to [v]ictim C is admissible and would be admissible in the event of a retrial, which I therefore find to be unnecessary."

Defendant timely appeals.

## LEGAL FRAMEWORK

The admissibility of other-acts evidence is governed by OEC 404(3)[4] and OEC 404(4).[5] OEC 404(3) prohibits the use of other-acts evidence to show that the act is indicative of a character trait and that the person is likely to have acted in conformity with that character trait during the events at issue at trial (*i.e.*, the person's propensity). *Davis III*, 372 Or at 630-31. OEC 404(3)'s prohibition on character evidence also extends to propensity reasoning, *viz.*, when the proponent's theory of relevance requires the factfinder to rely on an inference about the person's bad character and resultant propensity to commit criminal acts at any link in the chain of logical relevance. *Id.* at 631 (discussing *State v.*

---

[4] OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

[5] OEC 404(4) provides:

"In criminal actions, evidence of other crimes, wrongs or acts by the defendant is admissible if relevant except as otherwise provided by:

"(a) [Certain other rules of evidence] and, to the extent required by the United States Constitution or the Oregon Constitution, [OEC 403];

"(b) The rules of evidence relating to privilege and hearsay;

"(c) The Oregon Constitution; and

"(d) The United States Constitution."

*Jackson*, 368 Or 705, 717, 498 P3d 788 (2021)). "If character and propensity reasoning is necessary, in any amount, to establish relevance and connect the other act to the issues at trial, OEC 404(3) requires its exclusion." *Id.*

However, "the legislature intended OEC 404(4) to supersede OEC 404(3) in criminal cases, except, of course, as otherwise provided by the state or federal constitutions." *Williams*, 357 Or at 15.[6] And because OEC 404(4) provides simply that, in criminal cases, evidence of "other crimes, wrongs or acts" by the defendant generally is admissible if it is relevant, it "does not require the state to prove to the court that other acts evidence is offered for a purpose other than to prove character or that the relevance of that evidence does not rely on propensity reasoning." *Davis III*, 372 Or at 633.

There are two primary constraints on the admissibility of other-acts evidence under OEC 404(4). First, the evidence must be logically relevant under OEC 401—it must have any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable. *Id.* (discussing *Williams*, 357 Or at 14). Second, the trial court must conduct OEC 403 balancing "according to its terms" before admitting the evidence, meaning it "must exclude even relevant evidence under OEC 404(4) when, in the exercise of its discretion, it determines that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice." *Id.* at 633-34 (discussing *Baughman*, 361 Or at 402).[7]

---

[6] The court later clarified in *Baughman* that OEC 404(4) supersedes OEC 404(3) in criminal cases only to the extent that the evidence is offered to prove the defendant's character. 361 Or at 404 ("If other acts evidence is not proffered to prove a defendant's character, but instead is offered for a nonpropensity purpose, then analysis under OEC 404(4) is unnecessary; the evidence 'may be admissible' [for a permissible nonpropensity purpose] under the second sentence of OEC 404(3)."). However, *Davis III* retreated from that approach and instead explained that "in criminal trials in Oregon, the applicable subsection of OEC 404 that applies to acts of a defendant offered in a criminal trial is OEC 404(4), not OEC 404(3)." 372 Or at 633 (footnote omitted); *see also id.* at 635 (noting that "OEC 404(3) is no longer technically controlling of other acts of a defendant in a criminal trial").

[7] *Baughman* also clarified that OEC 404(4)(a) and OEC 404(4)(d) provide independent bases for excluding other-acts evidence: as an exercise of discretion after OEC 403 balancing according to its terms, and as a matter of law when the evidence would render a trial fundamentally unfair in violation of due process, respectively. 361 Or at 402.

"OEC 403 balancing must be conducted to preclude the admission of 'concededly relevant evidence' that has the capacity 'to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.'" *Baughman*, 361 Or at 402-03 (quoting *Old Chief v. United States*, 519 US 172, 180, 117 S Ct 644, 136 L Ed 2d 574 (1997)). A court conducting OEC 403 balancing of OEC 404(4) other-acts evidence should consider where the evidence falls on a "spectrum depending on whether character reasoning is present and how it is used." *Davis III*, 372 Or at 635-36 (discussing *Baughman*, 261 Or at 405, and *Williams*, 357 Or at 19-20). Accordingly, whether other-acts evidence is relevant for a propensity or a nonpropensity purpose "will have a significant effect" on whether the trial court admits the evidence. *Id*. at 635 (quoting *Baughman*, 261 Or at 405).

In *Williams* and *Baughman*, the Supreme Court announced the general framework for admissibility of other-acts evidence under OEC 404(4) after OEC 403 balancing. But it was not until recently, in *Davis III*, that the court provided specific guidance on how to assess the relative probative value and danger of unfair prejudice of other-acts evidence and a trial court's range of discretion under that framework. We therefore discuss *Davis III* in some detail.

The defendant in *Davis III* was charged with attempted first-degree sexual abuse for attacking a woman, a complete stranger who was jogging by him. 372 Or at 620. To prove that the defendant intended to sexually assault the victim, the state sought to introduce evidence of "highly offensive, sexually explicit notes" that the defendant had previously written and delivered to two other women whom he did not know in the weeks preceding the charged attack that "expressed his desire to forcibly sexually assault the two women." *Id*. The issue on review was whether the trial court had correctly ruled, after remand, to admit the notes evidence under OEC 404(4) after OEC 403 balancing. *Id*. at 629.

The court first defined probative value and unfair prejudice in the context of OEC 403: "Probative value is essentially a measure of the persuasiveness that attaches to a piece of evidence," and "unfair prejudice" means that the evidence has "an undue tendency to suggest decisions on

an improper basis, commonly although not always an emotional one." *Id.* at 634 (internal quotation marks and citations omitted).

The court then explained that determining "the degree of character-based reasoning that is present" in the proponent's theory of relevance "is central to performing the OEC 403 balancing of evidence admitted under OEC 404(4)" contemplated by the spectrum of relative probative value and danger of unfair prejudice first described in *Williams*. *Id.* at 629-30. To properly assess where on the *Williams* spectrum the evidence falls, a court is "advised to determine whether other acts evidence that is being offered under OEC 404(4) is either explicitly, or by inference, evidence of character and whether propensity reasoning is at play." *Id.* at 635; *see also id.* at 637 ("[T]o properly assess the probative value and prejudicial effect of the [other acts] evidence, we are called upon to decide the relative value of that degree— that is, to what degree is character, or propensity reasoning, present here? Does the relevance of the [other-acts] evidence derive primarily or substantially from character, or does the relevance of the [other-acts evidence] derive primarily or substantially from a noncharacter source?"). The court explained:

> "*Williams* described the two ends of the spectrum but did not expressly discuss what types of evidence fall between those poles. Given how this court described the ends of the spectrum, however, it follows that the middle of that spectrum consists of evidence where character reasoning may be implicit *to some degree*, or where, despite a noncharacter purpose being offered by the proponent of the evidence, a jury or factfinder could perceive the evidence as relying on character and action in conformity with character as its source of relevance to the trial. This potential for admission, subject to OEC 403 balancing, of character and character-based propensity reasoning, *to some degree*, is the essence of the change wrought by OEC 404(4)."

*Id.* at 636 (emphases in *Davis III*).

Next, the court explained that "assessing other acts evidence may require parsing of the 'act' into its constituent parts to assess which aspects go to establish character, as opposed to noncharacter," and that such parsing

also "facilitates discussion amongst the court and the parties about potential redactions or limiting instructions to minimize problems associated with the proffered evidence." *Id.* at 637 n 11. Applying that framework to the notes evidence in that case, the court found "it useful to consider two aspects of the notes' evidentiary value," their contents and their placement, in order "[t]o tease out the relative degree to which character may be present." *Id.* at 637-39.

The contents of the notes were the defendant's statements and therefore "direct evidence of [the] defendant's thoughts, desires, and intentions" and not evidence that "establishes that [the] declarant has a particular character." *Id.* at 638. Accordingly, "[t]he primary inference created by the content of the notes is the noncharacter-based inference that [the] defendant—having repeatedly, and within a short period, intentionally and deliberately expressed, without ambiguity, his intent to violently sexually assault strangers—possessed the same continuous intent when he assaulted the victim in this case mere weeks later." *Id.* at 639.

Turning to the placement of the notes—on the windshields of vehicles, parked in public places, belonging to women whom the defendant did not know—the court did "not foreclose that a jury could also, and at the same time, see the notes as evidence of [the] defendant's character" because "the state was implicitly asking a factfinder to infer that [the] defendant had observed strange women, knew their vehicles, and targeted them based on their appearance." *Id.* at 639-40. Viewed through that lens, the notes were also "indicative of his character and actions in conformity with character: that [the] defendant stalked strangers in the past, has the character of a stalker of strangers, and now, in this case, acted in conformity with that character by stalking the victim here, who was a stranger to him." *Id.* at 640.

Ultimately, while "the contents and placement of the notes, viewed *in toto,* could be seen as potentially invoking character as the link to establish relevance," the court concluded that "[t]he relevance of the notes primarily or substantially is derived from their contents," which are "expressions of continuous intent, not character." *Id.* at 640.

Assessing the probative value of the notes' contents, the court concluded that they were "highly probative" because, as "direct expressions of [the] defendant's intent," they described, "in [his] own words, his desire to engage in violent sexual acts with strangers"—the proposition the state sought to prove in the charged offense—and because the statements were repeated over weeks, written and unambiguous, and intentionally made. *Id.* at 640-41.

Assessing the danger of unfair prejudice of the notes as a whole, the court observed that the highly probative nature of the notes' contents was prejudicial, but not unfairly so, and that, "even if the notes are reliant on some degree o[n] character, that degree is marginal, and character is certainly not the primary or substantial source of their relevance." *Id.* at 641. Further, the trial court "took numerous actions to mitigate any unfair prejudice, including redacting some of the most incendiary wording from the notes to limit their inflammatory effect, limiting the state's use of the notes evidence, and giving the jury a limiting instruction." *Id.*

Finally, the court reiterated that OEC 403 "favors admissibility, but ultimately is discretionary" and that "the question is whether, on this record, admission of the evidence was one—among multiple—legally permissible outcomes." *Id.* The court then held that "because the primary or substantial value of the notes was not derived from character, or character-based propensity reasoning, declining to exclude the evidence under OEC 403 was within the permissible range of the trial court's discretion." *Id.* at 642.

We understand *Davis III* to set forth the following legal framework for admitting other-acts evidence under OEC 404(4) and OEC 403. First, the court should parse the other "acts" into constituent parts, where possible, to aid in determining the degree of character present in the proponent's theory of relevancy. Second, the court should consider the probative value of each constituent part of the evidence to determine whether its relevance relies on character reasoning expressly or by implication. Third, the court, in its discretion, may admit evidence that does not primarily or substantially derive its relevance from character-based

propensity reasoning. Finally, whether a court acts within its permissible range of discretion to admit such evidence may depend on whether the court took action to mitigate any unfair prejudice, such as redacting inflammatory details, limiting the state's use of the evidence, and instructing the jury on how it may consider the evidence.

## ANALYSIS

Returning to the present case, the state offered other-acts evidence of defendant's prior sexual abuse of C under *Williams* to establish an element of the charged offense, *viz.*, that defendant subjected B to "sexual contact" when he touched her breasts, meaning that he did so "for the purpose of arousing or gratifying [his] sexual desire." *See* ORS 163.427(1)(a) (an element of first-degree sexual abuse is subjecting the victim to "sexual contact"); ORS 163.305(5) (defining "sexual contact"). Again, *Williams* described the logical chain of relevance for such "sexual purpose" evidence as follows: "If the jury inferred from the [other-acts] evidence that defendant had a sexual interest in children generally, then the jury could take defendant's interest into consideration in deciding whether defendant had acted on that interest and with that purpose on the charged occasion." 372 Or at 23.

*Williams* did not expressly characterize "sexual purpose" evidence as propensity evidence and instead emphasized the permissible ultimate inference it established, that the defendant acted with a sexual purpose within the meaning of the element of sexual contact.[8] However, we

---

[8] *Williams* identified a second ultimate inference that may be drawn from a defendant's sexual interest in children generally, *i.e.*, that the defendant "acted on that interest *** on the charged occasion." *See also id.* ("The fact that defendant has a sexual interest in children would not, alone, establish that defendant acted on that interest in the charged circumstances, but it is a fact that is logically relevant to that issue."); *see also id.* (emphasizing that one reason that there is a "slim but distinct difference between using the [other-acts] evidence to establish defendant's character and propensity to act accordingly, and offering that evidence to establish defendant's sexual purpose" is that "[t]he state did not offer the evidence to establish that defendant committed the charged acts"). We understand that theory of relevancy, in which other-acts evidence is offered to prove that the defendant *committed the act* charged in the offense, to be an impermissible propensity purpose. *See Skillicorn*, 367 Or at 493-94 (explaining that evidence that a defendant "had acted a certain way during a prior incident" offered to prove that he "acted in a similar way during the charged incident"

have since held that evidence of a defendant's prior sexual misconduct involving a different victim offered to prove the defendant's sexual purpose in the charged conduct is propensity evidence because it relies on propensity reasoning. *State v. Cave*, 321 Or App 81, 86, 516 P3d 279 (2022) ("[I]f the state's theory of admissibility requires the factfinder to infer from defendant's prior actions that he was more likely to have acted with the same purpose in the charged instance, that evidence is propensity evidence[.]"); *State v. Nolen*, 319 Or App 703, 710, 511 P3d 1110 (2022) (holding that sexual purpose evidence relies on propensity reasoning when the state's theory of relevance requires the jury to infer that the defendant's prior similar sexual abuse of a different victim proves that the defendant acted with a sexual purpose in the present case).. And in *Martinez I*, we held that the other-acts evidence at issue in this case is propensity evidence. 315 Or App at 56 ("[W]e agree *** that the other-acts evidence concerning defendant's conduct toward C was 'propensity evidence.'").[9]

---

was propensity evidence because the evidence used the defendant's character "to prove that he acted in conformance therewith"); *State v. Terry*, 309 Or App 459, 466, 482 P3d 105 (2021) (error in admitting inflammatory evidence to prove the defendant's sexual purpose was harmful because there was "some likelihood that the jury relied on that evidence in finding that [the] defendant committed the charged conduct").

[9] We note that *Davis III* may call into question our conclusion that "sexual purpose" evidence *categorically* is propensity evidence. In *State v. Davis*, 290 Or App 244, 255, 414 P3d 887 (2018) (*Davis I*), we concluded that the notes were propensity evidence because the state's theory of relevance depended on a propensity inference:

> "[T]o conclude that the same motive that drove [the] defendant to leave sexual notes for two female strangers also induced him to sexually assault a third person on a different occasion, one must draw the intermediate inference that the desire expressed in the notes was not personal to the recipients but, rather, was reflective of a general desire for violent sexual gratification."

We described that intermediate inference as dependent "upon the existence of a persistent trait intrinsic to [the] defendant," namely, "an interest in sexually assaulting *any* female stranger" that "persists in varying situations throughout life[.]" *Id.* (emphasis in original; internal quotation marks and citation omitted).

However, in *Davis III*, the court cautioned that conceptualizing "every act [as] an act of character—the character of a person who would engage in that act *** improperly injects character where it does not exist." 372 Or at 637. And, contrary to our conclusion in *Davis I*, the court concluded that the notes were "admissions that [the defendant] desired to sexually assault multiple strangers in the weeks preceding the attack," which was "certainly evocative of *probabilistic* reasoning" but stemmed from "defendant's own admissions, not his character." *Id.* at 639 (emphasis in original).

Having concluded that the other-acts evidence relating to defendant's sexual abuse of C relies on character and propensity reasoning, we nonetheless proceed to apply the *Davis III* framework: to assess the evidentiary value of the other-acts evidence of defendant's prior sexual abuse of C in establishing defendant's sexual purpose in the charged offense, and to determine the *degree* of character reasoning present in the state's theory of relevancy. To aid that determination, we find it useful to divide the evidence into the following conceptual parts: (1) the abusive conduct, and (2) the context of the abuse.

We first consider the probative value of the prior abusive conduct to determine whether its relevance relies on character reasoning expressly or by implication. The evidentiary value of defendant's prior abuse of C primarily derives from the nature of the abusive conduct itself: that defendant engaged in sexual contact with a girl beginning when she was 11 years old and continuing until she was 15 years old is highly probative of his sexual interest in young girls generally, which we understand to establish defendant's sexual predisposition or character. The evidence makes it more probable that defendant had a sexual interest in B, an 11-year-old girl at the time of the charged offense, and, therefore, that he acted with a sexual purpose in committing the offense. Further, that defendant's abuse of C began as inappropriate touching and progressed, over four years, to sexual penetration establishes that defendant's conduct was repeated, unambiguous, and intentional. Those inferences support the state's theory that defendant acted with a sexual purpose in the charged conduct and not, as he stated to Rookhuyzen, with the intent to simply wake B from slumber. In addition, defendant's abuse of C occurred close in time to the charged abuse of B, which makes it more likely that his sexual interest in children was ongoing. However,

___

Here, the state expressly relied on the theory of relevance articulated in *Williams* when it offered evidence of defendant's prior sexual abuse of C to establish defendant's "sexual purpose" in the charged sexual abuse of B. We understand the *Williams* theory of relevance to explicitly, and necessarily, rely on an intermediate character inference, *i.e.*, that a defendant has a sexual interest in children generally, and to employ propensity reasoning, *i.e.*, that the defendant's sexual predisposition makes it more likely that they acted with a sexual purpose in the charged offense. It is therefore unnecessary in this case to reconcile those cases with *Davis III*.

although the state did not offer it for that purpose, the jury could also see defendant's repeated and escalating abuse of C as establishing that he is a sexual predator who targets children.

Next, we consider the probative value of the context of abuse in establishing defendant's sexual purpose in the charged offense. It is difficult to discern how C's familial relation to defendant supports the proposition that defendant acted with a sexual purpose in the charged offense given that B is not a member of defendant's family. It is, however, readily apparent how that fact supports an extraordinarily negative character inference about defendant as a person. Further, it is difficult to discern how the setting of the abuse—that it occurred in defendant's home, with others sleeping nearby—establishes that defendant acted with a sexual purpose in the charged offense absent some indication that the setting bears on defendant's sexual gratification in some way. But it is more readily apparent that it establishes defendant's propensity to act on his sexual predisposition towards children. Indeed, that that contextual evidence establishes that defendant opportunistically acts on his sexual interest in children is evident in how the state used it: to argue to the jury in rebuttal that defendant is "a man willing to prey on a vulnerable victim he had access to, a child who – an[] 11-year-old who is stuck at his house."

Finally, we consider the probative value of the evidence that defendant's abuse resulted in him fathering C's child in establishing defendant's sexual purpose in the charged offense. The trial court reasoned that that contextual evidence was "solid" and therefore had "exceptionally high probative value on the question of [] defendant's sexual interest in children." Certainly, that inference draws its persuasive force from rendering defendant's sexual abuse of C irrefutable. But here, C also testified that defendant's abuse involved repeated sexual intercourse, which defendant did not dispute, and defendant's sexual interest in children can be inferred from that prior sexual contact with a child, regardless of whether it resulted in impregnating his victim. Thus, given the probative value of evidence of the prior abusive conduct itself, to which C was available to testify in

detail and which defendant did not dispute, the contextual evidence that defendant fathered C's child did more to bolster C's testimony that the prior abuse definitely occurred than it did to establish defendant's sexual interest in children or that he acted with a sexual purpose when committing the charged offense.

We turn to the prejudicial effect of the other-acts evidence of defendant's prior abuse of C. As to evidence of the prior abusive conduct itself, the state offered that evidence as propensity evidence that necessarily relied on the intermediate inference that defendant has a sexual interest in children generally, even though it was probative of the ultimate inference that defendant acted with a sexual purpose and therefore subjected B to sexual contact in the charged offense. Accordingly, we acknowledge that the *risk* of unfair prejudice that inheres in character-based propensity reasoning was necessarily present here. *See, e.g.*, *Davis III*, 372 Or at 641 ("Certainly, the prejudicial effect of character evidence is great[.]"); *Skillicorn*, 367 Or at 477-81 (discussing the numerous "harmful effects" of character evidence and the history of its prohibition).

It may therefore seem inescapable to conclude, under the *Davis III* framework, that even the highly probative prior abusive conduct evidence "primarily or substantially" derives its relevance from defendant's character and, therefore, that the trial court abused its discretion in declining to exclude the evidence under OEC 403. *See* 372 Or at 641 (holding that "because the primary or substantial value of the [other-acts evidence] was not derived from character, or character-based propensity reasoning, declining to exclude the evidence under OEC 403 was within the permissible range of the trial court's discretion"). But the application of *Davis III* is not that straightforward in this case, for a number of reasons.

First, the court in *Davis III* explained that the middle of the *Williams* OEC 403 spectrum includes "evidence where * * * despite a noncharacter purpose being offered by the proponent of the evidence, a jury or factfinder could perceive the evidence as relying on character and action in conformity with character as its source of relevance to the

trial." 372 Or at 636; *accord State v. Moles*, 295 Or App 606, 618 n 5, 435 P3d 782 (2019), *rev'd on other grounds*, 366 Or 549, 466 P3d 61 (2020) (concluding that other-acts evidence of "sexual purpose" falls in the middle of the *Williams* spectrum because *Williams* concluded that such "prior bad acts have cognizable relevance to show sexual purpose" and that "admission of such evidence does not violate the [D]ue [P]rocess [C]lause"). Here, unlike the other-acts evidence in *Davis III*, which could be parsed into constituent parts with distinct theories of relevancy, only one of which depended on character, the relevance of defendant's prior child sexual abuse in this case necessarily depends on defendant's character, regardless of how one parses it. Thus, although a jury or factfinder would perceive the evidence as relying on character as its source of relevance to the trial, *Davis III* nonetheless suggests that it falls somewhere in the middle of the OEC 403 balancing spectrum by virtue of it having cognizable probative value as to whether defendant acted with a sexual purpose and therefore subjected B to sexual contact, an element of the charged offense.

To further complicate things, unlike this case, *Davis III* was not a child sexual abuse prosecution. *Williams* held that due process requires OEC 403 balancing of other-acts evidence admitted under OEC 404(4), but also recognized that, because the extent of due process protections can depend on "historical practice," the exclusion of other-acts evidence involving character and propensity reasoning in child sexual abuse cases is not so deeply rooted as to be "fundamental." 357 Or at 17-18. Thus, while *Williams* suggested, and *Baughman* reiterated, that propensity evidence may be categorically inadmissible in criminal cases other than child sexual abuse prosecutions under the Due Process Clause, those cases made clear that propensity evidence may be admissible in child sexual abuse cases after OEC 403 balancing when it has cognizable probative value to an issue other than the defendant's character and propensity. *Williams*, 357 Or at 17 (noting the possibility that due process could preclude the admission of other-acts evidence to prove propensity in a case where the defendant is charged with crimes other than child sexual abuse); *Baughman*, 361

Or at 403 n 8 (same); *see also Skillicorn*, 367 Or at 476 n 2 (same).

Finally, *Davis III* also suggests that the prejudicial effect of character evidence may be mitigated by, among other things, the trial court instructing the jury that it could use the evidence only for the limited permissible purpose for which the state offered it, as the court attempted to do here.[10]

All of that makes it difficult to reconcile *Davis III*'s formulation of when a trial court abuses its discretion in declining to exclude other-acts evidence (when the other-acts evidence primarily or substantially derives its probative value from character or character-based propensity reasoning) with the articulated theory of relevancy for sexual purpose evidence (that necessarily relies on an intermediate character inference) in *Williams* and its emphasis on how the historical exception to the exclusion of propensity evidence in child sexual abuse prosecutions bears on OEC 403 balancing of other-acts evidence proffered under OEC 404(4). But we need not definitively resolve those tensions to reach our disposition in this case.

Even assuming that the prejudicial effect of the prior abusive conduct evidence that relied on character would not, with a proper limiting instruction, substantially outweigh its probative value to establish that defendant acted with a sexual purpose in the charged offense, the court's instruction here did not limit the jury's use of the other-acts evidence to that aspect of the element of sexual contact, but instead to whether defendant "*acted on* the [sexual] interest [in children] as to the charged offense." Further, the contextual evidence of defendant's prior abuse of C created a substantial risk that the jury would convict defendant because he is, in the state's words, "a man willing to prey on a vulnerable victim," specifically, a child. A proper limiting instruction could not mitigate that prejudice sufficiently for the contextual evidence to be admissible under

---

[10] We had previously suggested otherwise. *See State v. Tinoco-Camarena*, 311 Or App 295, 308 n 11, 489 P3d 572, *rev den*, 368 Or 561 (2021) ("To instruct that other acts may be considered only for [a permissible] purpose * * * does not avoid the problem if propensity is the implicit link between" the other acts and the permissible inference.).

OEC 403, because the contextual evidence had little to no cognizable probative value to establish defendant's sexual purpose in the charged offense.

We do not foreclose that, under *Davis III* and *Williams*, the trial court may have discretion on remand to admit the other-acts evidence of defendant's prior abusive *conduct* toward C, with a correct limiting instruction that narrows the use of that evidence to proving defendant's sexual purpose as to the element of sexual contact. The parties may develop additional arguments on that issue on remand. However, the other-acts evidence of the *context* of defendant's prior abuse of C rendered "the primary or substantial value" of the other-acts evidence, viewed *as a whole*, to be "derived from character, or character-based propensity reasoning." *Id.* at 642. We therefore conclude that the trial court abused its discretion in declining to exclude at least part of the evidence—that of the context of defendant's prior abuse of C— under OEC 403. And, as we concluded in *Martinez I*, "the error in this case was not harmless." 315 Or App at 59.

Reversed and remanded.