No. 433 May 20, 2026 703

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TYRIK ALIEM DAWKINS,
*Defendant-Appellant.*

Washington County Circuit Court
23CR08636; A184576

Andrew Erwin, Judge.

Argued and submitted April 23, 2026.

Rond Chananudech, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Doug M. Petrina, Assistant Attorney General, argued the cause for respondent. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Interim Deputy Attorney General.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

JACQUOT, J.

Affirmed.

**JACQUOT, J.**

Defendant appeals a judgment of conviction, following a jury trial, for two counts of first-degree rape, ORS 163.375, two counts of first-degree sexual abuse, ORS 163.427, two counts of first-degree sodomy, ORS 163.405, and one count of coercion, ORS 163.275. Defendant was acquitted on one count of first-degree rape and one count of first-degree sexual abuse. In addition to the charged conduct, evidence at trial included other acts evidence regarding similar conduct that occurred in a neighboring county, Multnomah County. The charged conduct and other acts evidence all involved defendant's conduct toward a single victim, T, over the course of a single weekend. Defendant was acquitted for conduct that occurred on Friday, convicted for conduct that occurred on Saturday, and the trial court admitted other acts evidence of conduct that occurred on Sunday.

On appeal, defendant raises two assignments of error challenging the trial court's rulings to admit certain other acts evidence. Defendant argues that the trial court improperly admitted evidence regarding the Sunday conduct, and erred by allowing T to testify that defendant said he was "not afraid to go *back*" to prison or jail. (Emphasis added.) The state responds that the trial court correctly analyzed and admitted evidence regarding the Sunday conduct. The state argues that defendant failed to preserve his second assignment of error and, at any rate, that the trial court did not err. The state also argues that if there was any error regarding either evidentiary ruling, it was harmless. For the reasons provided below, we affirm.

Defendant and T met through a dating website. Several days prior to the weekend giving rise to the charged conduct, they went on a date. During the date, defendant displayed "confrontational" and "jealous" behavior. They subsequently went on another date and had consensual sex. Soon after, on a Friday, they engaged in sexual activities, in Washington County, which T reported as nonconsensual. T testified that defendant displayed threatening and scary behavior on Friday, including stating that if T did not give him sex, he was "going to take it," and brandishing a kitchen knife "with a psychopathic look on his face ***."

On Saturday morning, also in Washington County, defendant initiated several sexual acts. Defendant slapped T across the face and called her names. He ejaculated inside of her when she had told him not to do so. At one point on Saturday, he threatened her, "If you do something stupid, I will kill you, 'cause I'm not afraid to go back to prison."[1] He also hit her head into the windshield of her car. That night, he subjected her to several sexual acts despite T screaming and saying "no," "get back," and "get off of me."

On Sunday, T drove defendant to his hotel room in Multnomah County. Defendant told T to come up to his hotel room. He told her to get undressed and again insisted on sex, which T described as "aggressive [and] cold hearted." He again threatened negative consequences against her if she tried to contact police.[2]

Before trial, defendant moved to exclude evidence of what occurred in Multnomah County. The state responded that the evidence was admissible because it was "relevant to show defendant's intentions" and T's "lack of consent." At a pretrial hearing on the matter, defendant also challenged the admissibility of expected testimony by T that defendant said, "I'm not afraid to go back to jail." Defendant asked the court to "consider especially" that phrase because the jury is "not allowed to know *** that he [is] in custody now," and informing the jury that he was not afraid to go *back* to jail is "way too prejudicial."

The court determined that the evidence regarding conduct in Multnomah County was admissible as "sexual predisposition evidence for the same victim" and was not propensity evidence, under *State v. De Leon Say*, 319 Or App 271, 510 P3d 979, *rev den*, 370 Or 303 (2022), and *State v. McKay*, 309 Or 305, 787 P2d 479 (1990).[3] The court deter-

---

[1] At the relevant pretrial hearing, the anticipated testimony used the term 'jail.' During trial, T testified that defendant said, "If you do something stupid, I will kill you, 'cause I'm not afraid to go back to prison."

[2] The Sunday conduct was originally charged in this case, until the state learned that it occurred across county lines in Multnomah County. Those charges were then dismissed.

[3] Other acts evidence offered "to demonstrate the sexual predisposition [a] defendant had for [a] particular victim" is not propensity evidence. *McKay*, 309 Or at 308.

mined that the proffered evidence had high probative value and a "rather low" danger of unfair prejudice. The court determined that testimony about defendant's statement that he was not afraid to go back to jail was admissible to show consciousness of guilt or his attempts to dissuade T from filing a police report. Regarding the mention of going *back* to jail, the court suggested that defense counsel could request a limiting instruction.

Following the trial and jury deliberations, the jury acquitted defendant of two sex crime charges regarding conduct that occurred on Friday. The jury found defendant guilty of six sex crime charges and coercion regarding conduct on Saturday.

We review whether a trial court applied the correct legal framework in considering admission of evidence for legal error. *State v. Martinez*, 335 Or App 643, 647, 559 P3d 907 (2024), *rev den*, 373 Or 713 (2025) (*Martinez II*). We review a trial court's OEC 401 relevance determination for legal error and an OEC 403 balancing determination for abuse of discretion.[4] *State v. Estrada-Vargas*, 342 Or App 374, 377, 576 P3d 985 (2025), *rev den*, 374 Or 698 (2026).

Under OEC 404(3) propensity evidence is inadmissible "in order to show that the person acted in conformity" with a certain character trait or past behavior. However, "[e]vidence of other crimes, wrongs or acts" may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." OEC 404(3).[5]

---

[4] OEC 401 provides:

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

OEC 403 provides, in part:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, * * *."

[5] In criminal matters, OEC 404(4), rather than OEC 404(3), governs the admissibility of other acts evidence. However, how evidence would fair under an OEC 404(3) analysis can be instructive for considering admissibility of other acts evidence in criminal proceedings. *State v. Davis*, 372 Or 618, 633-635, 553 P3d 1017 (2024).

"If character and propensity reasoning is neces-sary, in any amount, to establish relevance and connect the other act to the issues at trial," it is not admissible under OEC 404(3). *Martinez II*, 335 Or App at 650 (internal quo-tation marks and citation omitted). However, even evidence that must be excluded under OEC 404(3) for its dependence on propensity reasoning may be admissible in a criminal action under OEC 404(4), subject to a four-part analysis. *Martinez II*, 335 Or App at 654-55.

"[E]vidence of other crimes, wrongs or acts by the defendant," OEC 404(4), is admissible "if it is relevant under OEC 401, and if its probative value is not substantially out-weighed by the danger of unfair prejudice under OEC 403."[6] *Estrada-Vargas*, 342 Or App at 377.

Because other acts evidence may be inadmissi-ble under one theory of relevance and admissible under a different one, we begin by addressing the state's theory of admissibility and the trial court's subsequent determina-tions. After defendant filed a motion to exclude evidence of defendant's conduct in Multnomah County, the state argued that evidence of "not consensual" sexually assaultive con-duct involving use of "force," as well as statements made by defendant to T before and after the assault were relevant. The state argued that that conduct, which occurred *after* the charged conduct, was "relevant" to show defendant's "intentions," "[h]is knowledge that he did not have consent," and "to show the nature of the relationship between the par-ties ***." The state argued that the evidence was not being offered for propensity purposes. Defendant argued that the court needed to parse the evidence into constituent parts under *State v. Nolen*, 319 Or App 703, 511 P3d 1110 (2022).

The trial court determined that the evidence was admissible for nonpropensity purposes as evidence of "sexual predisposition toward the victim," under *De Leon Say* and *McKay*. In making that determination, the court explained that the Multnomah County other acts evidence

_____

[6] OEC 404(4) provides, in part:

"In criminal actions, evidence of other crimes, wrongs or acts by the defen-dant is admissible if relevant except as otherwise provided by" certain rules of evidence, and the state and federal constitution.

was "extraordinarily similar" to the charged conduct, it all occurred "within this generalized three-day period," and it involved the same victim and defendant. The court also determined that the evidence was highly probative because "[i]t will inform this jury as to how the parties conducted their sexual relationship and whether it was, in fact, consensual or not, whether it was by force, whether there's some absence or some mistake on part of one or misinterpretation on the other." The court determined that the probative value was significantly high, especially in light of defendant's theory of defense—that the sexual contact was consensual.

Further, the court explained that there was little danger of unfair prejudice because of "the entire nature [of the] three-day period, of what was sexually going on"; the high degree of similarity between the Multnomah County conduct and the charged conduct; and because the Multnomah County evidence would not add more "shock value." The court explained that because it was not "some other event, some other person, some other timeframe," and it was overall "the same operative facts," there was a "rather low" danger of unfair prejudice.

We understand the court to have admitted all proffered evidence about conduct that occurred in Multnomah County as nonpropensity evidence.

As we explained in *Nolen*, "[t]o the extent that propensity evidence is admissible [in a criminal matter], it is under OEC 404(4)." 319 Or App at 708 (internal quotation marks and citation omitted). In *Martinez II*, 335 Or App at 654, relying on *State v. Davis*, 372 Or 618, 553 P3d 1017 (2024), we articulated a four-part analysis for evaluating "other-acts evidence under OEC 404(4) and OEC 403."

> "First, the court should parse the other 'acts' into constituent parts, where possible, to aid in determining the degree of character present in the proponent's theory of relevancy. Second, the court should consider the probative value of each constituent part of the evidence to determine whether its relevance relies on character reasoning expressly or by implication. Third, the court, in its discretion, may admit evidence that does not primarily or substantially derive its relevance from character-based propensity reasoning. Finally, whether

a court acts within its permissible range of discretion to admit such evidence may depend on whether the court took action to mitigate any unfair prejudice, such as redacting inflammatory details, limiting the state's use of the evidence, and instructing the jury on how it may consider the evidence."

*Id*.

On appeal, the parties dispute whether the proffered other acts evidence is subject to parsing as articulated in *Martinez II* and *Davis*. The state argues:

"If the evidence passes OEC 404(3), that means it is nonpropensity evidence. It is only when the evidence does not pass OEC 404(3), that the court should look further to determine whether it is evidence that, although classified as propensity evidence for purposes of OEC 404(3), nonetheless does not primarily or substantially depend on character-based reasoning."

Conversely, defendant argues that evidence of defendant's conduct in Multnomah County can be parsed into three constituent parts, and that two of those parts rely on propensity reasoning that would bar admission of the evidence under OEC 404(3). Defendant argues that the constituent parts are: "(1) evidence that defendant and T[] had sexual intercourse; (2) evidence that the sexual intercourse was assaultive; and (3) evidence that T[] did not consent to the sexual conduct." Further, because the trial court did not parse the evidence, defendant argues the trial court erred in applying an incorrect legal framework, erred in conducting OEC 403 balancing, and erred by failing to mitigate the potential of unfair prejudice.

We conclude that the trial court did not err by admitting the other acts evidence as nonpropensity evidence. As the state argued pretrial, the other acts evidence was not offered to illustrate that defendant had a particular character that he acted in conformance with. *See State v. Martinez*, 315 Or App 48, 52, 499 P3d 856 (2021) (*Martinez I*) (defining "character" as "a person's disposition or propensity to engage or not to engage in certain types of behavior"). Rather, the other acts evidence was offered to show defendant's intent, knowledge, or absence of mistake, specifically with regard to his conduct toward a particular victim over a very limited

timeframe. The state offered the other acts evidence to show defendant's "knowledge that he did not have consent," "the nature of the relationship between the parties," during a very limited timeframe, and to show his "intentions during that timeframe." Other acts evidence admitted for those purposes is generally not precluded, because the relevance is not derived from propensity reasoning. *State v. Lopez*, 341 Or App 781, 785-86, 574 P3d 983, *rev den*, 374 Or 616 (2025) ("Other acts evidence that would be admissible under OEC 404(3) as relevant for a nonpropensity purpose 'generally will be admissible under OEC 403' so long as the risk of unfair prejudice does not substantially outweigh the probative value of the evidence." (Quoting *Davis*, 372 Or at 635)).

Defendant's argument that *Nolen* necessitates a different result is unpersuasive. In *Nolen*, 319 Or App at 710, we addressed a circumstance where the state's theory of admissibility for other acts evidence—the defendant having sexually assaulted other young girls in the past—necessarily derived its relevance from propensity reasoning: that the defendant committed the charged child sex abuse with a sexual purpose because he had a propensity or character of abusing children for a sexual purpose. *Accord State v. Reed*, 348 Or App 116, 121-22, ___ P3d ___ (2026) ("[E]vidence of a defendant's sexual interest in children relies upon propensity reasoning for its relevance."). In this case, the state's theory of admissibility (and the purpose for which the trial court admitted the evidence), did not require propensity reasoning.

The other acts evidence in this case allowed the jury to consider evidence of defendant's conduct towards a particular victim, including his sexual predisposition towards her, his intent or motive while engaging in sexual contact with her, and whether there was an absence of mistake or accident on his part regarding consent. It did not require propensity reasoning to do so. Even though the Sunday conduct occurred after the charged conduct, a rational factfinder could determine that he engaged in some of his Sunday conduct *because* he acted criminally the day prior.[7]

_____

[7] For example, at the pretrial hearing, the state argued that T would testify that defendant would not allow her to remain in the car alone on Sunday morning when he stopped at a store. The state argued that T would testify that, after the sexually assaultive conduct on Sunday, defendant threatened her if she went to police.

Even though there were different pieces of evidence regarding the Sunday conduct, the court did not err by failing to parse the evidence per the *Martinez II* framework, 335 Or App at 654-55. When there are multiple pieces of proffered evidence, as was the case here because the state sought to admit testimony about statements defendant made on Sunday, and multiple instances of assaultive or forceful conduct by defendant on Sunday, a court must consider each piece of proffered evidence for its relevance under OEC 401 and its admissibility under OEC 403. The record shows that the court did so here, determining that some of the proffered evidence was admissible as evidence of sexual predisposition towards the victim and some of it was relevant regarding motive, intent, absence of mistake, etc. On those bases, the court determined that it should not be excluded under OEC 403.[8]

However, that exercise is different from the *parsing* described in *Martinez II*, 335 Or App at 654-55, and *Davis*, 372 Or at 637 n 11. Typically, the kind of parsing described in *Martinez II* involves taking one piece of proffered evidence and "dividing [it] into conceptual parts," *Davis*, 372 Or at 637 n 11, that is, the *content* of the conduct and the *context* of the conduct, *Martinez II*, 335 Or App at 657. *See, e.g.*, *Davis*, 372 Or at 639-41 (parsing the content of notes from the placement of the notes on windshields of vehicles parked in public places); *Reed*, 348 Or App at 127 (parsing prior convictions for third-degree rape from the context of the evidence as offered at trial—a form addendum included with the judgment that referred to the defendant having "sexual deviancy").

The parsing described in *Martinez II* and *Davis* is required when propensity reasoning is present to some degree in a piece of proffered other acts evidence, in order to determine to what degree propensity reasoning is present and whether some parts of that evidence are inadmissible.[9]

_____

[8] We additionally note that the court and the state limited the level of detail or depth of testimony regarding the Sunday conduct.

[9] Where the theory of relevance for a particular piece of evidence depends entirely on propensity reasoning, parsing is typically not necessary, though the other components of the *Martinez II* framework are still required. *See Estrada-Vargas*, 342 Or App at 379-80 (parsing not useful because "regardless of how one

*Martinez II*, 335 Or App at 654-55. On the other hand, if evidence is proffered entirely for a nonpropensity purpose, such as the nonpropensity purposes illustrated in OEC 404(3), as it was here, and the "proponent [can] identify the logical pathway that it will be asking the factfinder to follow," without requiring propensity reasoning, *id.* at 708, the parsing framework described in *Martinez II* is not required.[10] *Lopez*, 341 Or App at 785-86 (parsing not required where the theory of relevance related to the defendant's motive and did not rely on propensity reasoning).

We next address defendant's argument that the trial court erred when it allowed T to testify that defendant said he was not afraid to go *back* to jail or prison. From our review of the record, it is not clear whether defense counsel requested, specifically, for the trial court to consider admitting a redacted version of testimony regarding the threat defendant made—such as allowing T to testify regarding defendant's statement so long as the word "back" was redacted. We assume without deciding that defendant's argument is preserved and we determine that defendant has not established that the trial court abused its discretion, *Estrada-Vargas*, 342 Or App 377 (OEC 403 balancing reviewed for abuse of discretion), nor has defendant "establish[ed] that the error was not harmless," *State v. Lotches*, 331 Or 455, 487, 17 P3d 1045 (2000).

Towards the end of the first day of trial, T was asked whether defendant made any threats to her on Saturday. T responded:

> "Yes. Yes. Before we went into the store, he would tell me, 'Don't do anything stupid. Don't try talking to somebody. Don't try calling the cops.' He made it clear. He says, 'If you do something stupid, I will kill you, 'cause I'm not afraid to go back to prison.'"

---

parses it," the relevance of the proffered evidence relied on propensity reasoning); *see also State v. McGee*, 341 Or App 237, 253, 572 P3d 1063 (2025), *rev den*, 374 Or 817 (2026) (relevance of proffered "evidence relied almost exclusively on propensity reasoning").

[10] In cases where a defendant identifies a theory of relevancy that does rely on propensity reasoning, a defendant could seek a limiting instruction or a court may determine that some form of mitigation is appropriate. *Martinez II*, 335 Or App at 654 (mitigating efforts are part of the analysis regarding admissibility of evidence that relies on propensity reasoning).

That was the only statement throughout the entirety of the three-day trial that referenced, in any way, a possibility that defendant had previously been incarcerated. That statement was fleeting and was offered to show that defendant was conscious of his guilt and willing to make significant threats against T. That the statement included the word "back," from which a listener could infer defendant had previously been incarcerated, was vague. The state did not reference or attempt to draw the jury's attention to any previous criminal conduct, convictions, or time in custody. Furthermore, in this case, "there is substantial and convincing evidence of guilt."[11] *Lotches*, 331 Or at 487. Thus, defendant has not established that the passing remark had more than "little likelihood" of affecting the verdict. *Id.*; *see State v. Pratt*, 316 Or 561, 583, 853 P2d 827, *cert den*, 510 US 969 (1993) (trial court did not abuse its discretion by declining to grant a mistrial after an "isolated" comment about the defendant's incarceration, which was "made in passing" and not capitalized on by the prosecution).

Affirmed.

---

[11] In addition to T's testimony, evidence included several text messages between defendant and T, testimony by T's then-work supervisor, and testimony by two investigating officers. The supervisor testified that T arrived late to work one day, pulled the supervisor aside, and disclosed she was late because of an incident. The supervisor testified that occurred mid-September 2021, which coincides with the charged conduct.