No. 528 June 11, 2025 237

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MENPHREY DOUGLAS McGEE,
*Defendant-Appellant.*

Multnomah County Circuit Court
19CR22915, 19CR58662, 19CN03969;
A178091 (Control), A178092, A177818

Jerry B. Hodson, Judge.

Argued and submitted June 14, 2024.

Mark Kimbrell argued the cause for appellant. Also on the briefs was Michael R. Levine. Menhrey McGee filed the supplemental brief *pro se.*

Jennifer S. Lloyd, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Pagán, Presiding Judge, Lagesen, Chief Judge, and O'Connor, Judge.*

PAGÁN, P. J.

In Case No. 19CR22915, convictions on Counts 2, 6, 10, 11, 12, and 13 reversed and remanded; otherwise affirmed. In Case No. 19CR58662, reversed and remanded. In Case No. 19CN03969, affirmed.

---

* Lagesen, Chief Judge *vice* Hadlock, Judge pro tempore; O'Connor, Judge *vice* Mooney, Senior Judge.

## PAGÁN, P. J.

In this consolidated criminal case, defendant appeals from two judgments of conviction relating to the alleged sexual abuse of his daughter, K, and associated witness tampering based on letters he sent from jail to his wife, K's mother. In Case No. 19CR22915, defendant was found guilty of seven counts of first-degree sexual abuse, ORS 163.427 (Counts 2, 3, 6, 7, 10, 11, and 13) and one count of luring a minor, ORS 167.057 (Count 12).[1] The court merged Count 3 into Count 2 and Count 6 into Count 7, and sentenced defendant to an aggregate term of 225 months in prison, with 45 months of post-prison supervision. In Case No. 19CR58662, defendant was found guilty and convicted of two counts of tampering with a witness, ORS 162.285, and was sentenced to 30 months of incarceration, to be served consecutively to his other term.[2]

In three counseled assignments of error, defendant challenges the denial of a motion to suppress and multiple evidentiary rulings. In a supplemental *pro se* brief, defendant raises seven additional assignments. We conclude that the seizure and search of defendant's cell phone were lawful, and therefore the trial court did not err in denying his motion to suppress. However, we conclude that the trial court erred in admitting "other acts" evidence, and therefore reverse and remand for retrial. That decision obviates the need to address defendant's third counseled assignment of error and most of defendant's *pro se* assignments. As to the remainder of defendant's *pro se* assignments, we have reviewed the arguments and are unconvinced that any of them present reversible error.

## I. FACTS AND PROCEDURAL HISTORY

This case arises from allegations that defendant sexually abused his daughter on multiple occasions. On the evening of April 2, 2019, K, who was nine years old at the time, sent a text message to her mother, Wilson, that said: "Mom,

---

[1] The jury acquitted defendant of one count of first-degree unlawful sexual penetration, ORS 163.411 (Count 9). The jury was unable to reach a verdict on two counts of first-degree rape, ORS 163.375 (Counts 1 and 5) and two counts of incest, ORS 163.525 (Counts 4 and 8), and those counts were therefore dismissed.

[2] In a third case, Case No. 19CN3969, the court found defendant in contempt on 22 counts, ORS 33.065. Defendant has not challenged the contempt findings on appeal.

Dad had sex with me." Wilson called the police. Portland Police Officer Brian Powell responded to the family home. Prior to responding, Powell learned that there was an outstanding warrant for defendant's arrest out of Colorado for failure to register as a sex offender. When Powell arrived, defendant was outside of the house, and when Powell called out to defendant, he ran and hid in bushes behind the house, despite Powell's direction to stop.

A K-9 unit was deployed and located defendant, at which point he was arrested on the outstanding warrant and for interfering with a police officer (for not obeying Powell's order to stop). Powell searched defendant and removed a cell phone and charger from his pajama pocket, placed them in an evidence bag, and transported them to the precinct with defendant. At the precinct, defendant was interviewed by Detectives Coffey and Manus, detectives with the child abuse team. During the course of that interview, defendant consented to a search of his home and to DNA swabs, and signed consent forms for those searches. When the conversation turned to pornography, defendant maintained that he had no pornography on his phone, although he admitted that he had some videos in his cloud storage account. He consented to the detectives adding his phone to the consent to search form and provided the detectives with the password to his cell phone. A later forensic search of defendant's phone located numerous pornographic videos, including many containing incest-themed content.

Prior to trial, defendant filed a motion to suppress any evidence discovered on his phone, arguing that the phone was illegally seized, and that even if it had been legally seized, the search exceeded the scope of his consent. Defendant additionally filed a motion *in limine* to exclude evidence of "other bad acts," including the pornography that was located on his phone. The court denied both motions. We discuss further facts and details of the motions in our analysis below.

## II.    SEIZURE AND SEARCH OF DEFENDANT'S PHONE

Defendant first assigns error to the trial court's denial of his motion to suppress evidence discovered on his phone. Defendant argues that the seizure and subsequent

search of his phone violated Article I, section 9, of the Oregon Constitution.[3] We conclude that the court did not err in denying the motion to suppress and address the seizure and later search of the phone separately.

A.  *Standard of Review*

We review the trial court's denial of defendant's motion to suppress "for legal error, accepting the facts as found by the trial court, so long as there is constitutionally sufficient evidence in the record to support the findings." *State v. Jones*, 286 Or App 562, 564, 401 P3d 271 (2017).

B.  *Seizure of Defendant's Phone*

At the time of defendant's arrest, he had his phone and a phone charging cable in the pocket of his pajama pants. In the course of a pat-down search for weapons, contraband, or items to assist in possible escape, Powell removed defendant's phone and charger and placed them in an evidence bag, which was transported to the police precinct with defendant, and they remained in the evidence bag until the detectives brought it into the interrogation room. In denying the motion to suppress, the trial court found that the phone was "seized by Officer Powell [as] personal property pursuant to an inventory." The court additionally stated:

> "Officer Powell also had probable cause that Defendant committed sexual crimes involving his daughter and had independent authority to seize the phone as evidence of these crimes. As articulated by Officer Powell, the evidentiary value of the cell phone could include GPS coordinates, text messages, and photos."

A warrantless seizure is *per se* unreasonable unless the seizure falls within one of the "specifically established and well delineated exceptions to the warrant requirement." *State v. Fulmer*, 366 Or 224, 230, 460 P3d 486 (2020) (internal quotation marks omitted). The issue before us is whether the seizure of defendant's phone falls under one of those exceptions.

---

[3] Article I, section 9, states: "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

Initially, the state argued that no constitutionally significant seizure had occurred and that, if it was a seizure, the seizure of the phone was justified both as an inventory of defendant's personal belongings upon being taken into custody and as a seizure incident to arrest. Following the Supreme Court's opinion in *State v. Wilcox*, 371 Or 756, 541 P3d 226 (2023), the state no longer disputes that a seizure occurred, and does not argue that the seizure was lawful pursuant to the mere fact that defendant was being taken into custody, and that all of his items could be removed from his possession.[4] At oral argument before us, the state acknowledged that *Wilcox*, along with our decision in *State v. Edwards*, 304 Or App 293, 446 P3d 1034 (2020), which the court, in *Wilcox*, declined to address, foreclose that argument for the time being.[5] Instead, the state now relies solely on the seizure being authorized incident to defendant's arrest. Specifically, the state argues that, because there was probable cause to arrest defendant for the sex crimes against his daughter, the officer was justified in

---

[4] In *Wilcox*, the defendant was transported to a detox facility by police, and in the process, officers searched the defendant's backpack, discovering contraband. 371 Or at 759. Rejecting the state's argument that no constitutionally significant seizure had occurred, the court stated:

"When a person is seized and taken into custody, their articles of clothing, and the items in their pockets may, or may not, be seized at the moment of their bodily seizure—a point we need not decide here. But when, after seizing a person, an officer removes items of clothing from the person, or items from the person's pockets, to separate those items from the individual, even temporarily, or holds those items as evidence or otherwise, those items have been seized. Removing those items and reducing them to exclusive control of law enforcement has interfered with the person's possessory rights—their right to possess the item themselves, and their right to exclude others from possessing the items."

*Id.* at 764.

[5] In *Edwards*, we held that:

"[T]he fact of arrest authorizes the seizure of narrow categories of personal effects, including effects that are? related to the probable cause for the arrest, and unrelated effects if their nature as contraband is evident in sight. Said another way, a lawful arrest does not, in and of itself, allow for an exploratory seizure of the effects on the person of an arrestee. Thus, the state is incorrect that the fact of a lawful arrest, of its own accord, allows for the constitutional seizure of all personal property on the arrestee's person."

304 Or App at 297-98 (internal citations omitted and quotation marks omitted). In *Wilcox*, the Supreme Court declined to consider whether *Edwards* was correctly decided, because the situation in *Wilcox* involved an administrative seizure, not a criminal seizure. *Wilcox*, 371 Or at 758. *Edwards* therefore remains controlling.

seizing defendant's phone as potential evidence of those sex crimes.

Defendant maintains that he was arrested only on the outstanding Colorado warrant and for interfering with a police officer, and that his phone was not potential evidence of either of those crimes. He argues that he was not arrested for the sex crimes, and the existence of probable cause that he had committed sex crimes against K did not alone justify the warrantless seizure. We agree with the state that the trial court did not err in concluding that the phone could be seized subject to there being probable cause to arrest defendant for the sex crimes.

As noted, a warrantless search or seizure is lawful only if it falls within an exception to the warrant requirement. *Fulmer*, 366 Or at 230. One such exception is for a search incident to arrest, which can be conducted "(1) to protect a police officer's safety; (2) to prevent the destruction of evidence; or (3) to discover evidence of the crime of arrest." *State v. Krause*, 281 Or App 143, 146, 383 P3d 307 (2016), *rev den*, 360 Or 752 (2017) (internal quotation marks omitted). We have previously held that a search incident to arrest "need not relate to the crime for which [a] defendant was arrested so long as it relates to another crime for which the officer effecting the arrest also had probable cause." *State v. Nix*, 236 Or App 32, 45, 237 P3d 842 (2010), *rev dismissed as improvidently granted*, 350 Or 298 (2011) (citing *State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986)). In *Nix*, under factual circumstances nearly identical to those present here, we rejected the defendant's proposition "that the only pertinent crimes [for purposes of a search incident to arrest] are those for which [the] defendant was, in fact, arrested, *viz.*, the crimes that were the subjects of the outstanding warrants." *Id.* We held that "[i]f an officer arrests a person based on an arrest warrant, but also has probable cause to arrest that person for a new crime, the officer may conduct a search for evidence of that new crime so long as the search is reasonable under the circumstances." *Id.* at 42. Inherent in the authority to search for evidence of the additional crime is the authority to seize any such evidence that is discovered.

Defendant does not challenge the *search* that occurred upon his arrest, only the *seizure* of the phone. More importantly, defendant does not dispute the trial court's finding that Powell had probable cause to arrest defendant for the alleged sex crimes against K. He additionally has not developed any argument that there was an insufficient basis for Powell to reasonably believe that the phone contained evidence related to the alleged sex crimes.[6] His argument is limited to the position that the search incident to arrest exception to the warrant requirement allows only for the seizure of evidence relating to the specific crime for which an individual is arrested, and no others, even when an officer has probable cause to arrest for additional crimes. In light of *Owen* and *Nix*, we reject that proposition. Given the remaining unchallenged findings, we conclude that the seizure of defendant's phone was not unlawful, incident to his arrest.[7]

C.   *Search of Defendant's Phone*

We turn now to defendant's argument that, even if the police lawfully seized his phone, the search of the phone was improper because the search exceeded the scope of defendant's consent. Specifically, defendant asserts that, at most, he consented to a manual search for pornography in his "cloud," and that the police exceeded that consent when they performed a full forensic download and search of his entire phone. We are not persuaded by defendant's argument.

As discussed above, a warrantless search is *per se* unreasonable, subject to certain specifically established and limited exceptions. One such exception is consent, where a

---

[6] At oral argument before us, defendant's counsel briefly mentioned that the seizure was not reasonable in scope. However, the briefing does not develop any argument on that basis, nor was that issue raised in the motion to suppress before the trial court.

[7] Because we conclude that defendant's phone was lawfully seized as potential evidence of the alleged sex crimes, we do not reach defendant's arguments regarding the officer's duty to ask defendant if he wanted to leave his phone at home or with his wife, nor do we reach defendant's argument that the police retained possession of the phone longer than was reasonable over the course of his transport to the precinct and interrogation. Both arguments rely on the premise that the phone was improperly seized as personal property/pursuant to an inventory of an arrestee.

person voluntarily grants a governmental actor permission to search a place or thing, relinquishing their privacy interest such that there is no intrusion by the state that must be justified. *State v. Bonilla*, 358 Or 475, 480, 366 P3d 331 (2015). The scope of an individual's consent is to be determined from the standpoint of the consenting person and is concerned with their actual understanding and intent. *State v. Blair*, 361 Or 527, 535-37, 396 P3d 908 (2017). "In determining whether a particular search falls within the scope of a defendant's consent, the trial court will determine, based on the totality of circumstances, what the defendant actually intended." *Id.* at 537. "That determination is a factual one" and on appellate review we "are bound by any findings of fact made by the trial court if constitutionally sufficient evidence supports them." *Id.* at 537-38. If the "defendant's intent with respect to the scope of consent is unambiguously expressed, that manifestation of intent is controlling." *Id.* at 538.

In ruling on the motion to suppress, the trial court made the following findings:

> "In the course of that interview, Defendant voluntarily, knowingly, and intelligently consented orally and in writing to search of his cell phone *** and signed consent forms acknowledging this. In fact, he assisted in the search by agreeing to enter his password and access his Samsung Cloud account for the detectives. There were no limits placed on the scope of the search of his phone, and after *** an initial denial Defendant acknowledged in the interview that his phone would contain evidence of pornography. At the very least, Defendant consented to the scope that would include pornography including child pornography and other such porn, which is exactly what has been at issue in these motions to suppress and the other motions that we'll get to in a minute.
>
> "* * * * *
>
> "Defendant gave a knowing, intelligent, and voluntary consent to search his phone ***. And the State's search of the cell phone was in the scope—within the scope of the consent that was given by Defendant."

Our review is for whether the trial court's factual determination that defendant's consent encompassed a search of his entire phone, based on the totality of the circumstances,

is supported by the record. We conclude that it is. In the course of the interview, which was recorded and played at the suppression hearing, the detectives asked defendant whether there was anything on his phone to be concerned with. Defendant maintained that there was not, denied having any child pornography, and told the detectives that he kept no pornographic videos directly on his phone, although he admitted to having a few adult videos saved in his Samsung cloud. Defendant agreed to unlock his phone to allow the detectives to search and provided them with his phone password. The detective added "1 Samsung S7 Active phone" and the phone number to the consent to search form that defendant had already signed, after orally receiving defendant's consent to add the phone to the form. At no point did defendant limit his consent to a search of the cloud storage only. The record supports the trial court's determination that there were no limits placed on the scope of the search of defendant's phone.

Defendant argues that the court's statement that, at the very least, defendant consented to a search that would have resulted in discovery of the evidence in question was erroneous because "the operative question is not whether defendant *consented to the evidence discovered*—rather it is whether defendant *consented to the search performed*." However, we read the trial court's conclusion to be that defendant consented to a full, unlimited search of the phone, and we interpret the "at the very least" statement to be more akin to an alternative finding. Defendant has not otherwise challenged the court's factual findings about what occurred when the detectives obtained defendant's consent to search his phone.

We therefore conclude that the seizure and search of defendant's phone were lawful, and the trial court did not err in denying defendant's motion to suppress evidence discovered on his phone.

### III.   OTHER ACTS EVIDENCE

We turn to defendant's argument that the trial court erred by admitting evidence discovered on defendant's phone that showed that he had downloaded scores of incest-themed pornographic videos. The state compiled a spreadsheet listing the titles of videos and the source websites that the videos

were downloaded from, and ultimately entered into evidence the spreadsheet and the videos themselves.[8] Defendant argues that the spreadsheet and videos were improperly admitted as "other acts" character evidence, asserting that they were not relevant for any nonpropensity purpose and were unfairly prejudicial, and therefore should have been excluded. We conclude that, because the relevance of the evidence derived primarily from character inferences and the evidence carried the risk of significant prejudicial impact, the trial court abused its discretion in admitting it. That error was not harmless. We therefore reverse and remand.

A.  *Legal Framework*

The admissibility of other acts evidence, as governed by OEC 404(3), OEC 404(4), and OEC 403[9] has been the subject of extensive legal analysis, most recently by the Supreme Court in *State v. Davis*, 372 Or 618, 553 P3d 1017 (2024), and by us in *State v. Martinez*, 335 Or App 643, 559 P3d 907, *rev den*, ___ Or ___ (2025) (*Martinez I*) and *State v. Martinez*, 341 Or App 10, ___ P3d ___ (2025) (*Martinez II*). In *Davis*, the Supreme Court clarified that, although other acts evidence is inadmissible under OEC 404(3) to prove that a party acted in conformity with their character, in

___

[8] A few seconds of one of the videos was played for the jury during the trial to demonstrate that it contained incest-themed content, and did not merely have an incest-related title, as defense counsel had suggested. The record does not reflect whether the jurors viewed any more of the videos during deliberations.

[9] OEC 404 states, in relevant part:

"(3) Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

"(4) In criminal actions, evidence of other crimes, wrongs or acts by the defendant is admissible if relevant except as otherwise provided by:

"(a) [certain other rules of evidence] and, to the extent required by the United States Constitution or the Oregon constitution, [OEC 403];

"(b) The rules of evidence relating to privilege and hearsay;

"(c) The Oregon Constitution; and

"(d) The United States Constitution."

OEC 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

criminal cases, evidence of other crimes, wrongs or acts by the defendant is nevertheless admissible under OEC 404(4) if relevant, subject to balancing under OEC 403. *Davis*, 372 Or at 630-37. In *Martinez I*, we summarized the constraints on the admissibility of other acts evidence under OEC 404(4) as follows:

> "First, the evidence must be logically relevant under OEC 401—it must have any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable. Second, the trial court must conduct OEC 403 balancing according to its terms before admitting the evidence, meaning it must exclude even relevant evidence under 404(4) when, in the exercise of its discretion, it determines that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice."

*Martinez I*, 335 Or App at 650 (internal quotation marks and citations omitted).

The Supreme Court offered the following guidance to trial courts when undertaking OEC 403 balancing in the context of other acts evidence:

> "[E]ven though 'character' is not mentioned in OEC 404(4) and, for that reason, the rule does not expressly prohibit evidence of a person's character \*\*\* or prohibit character and propensity reasoning to establish relevance \*\*\*, a court is still advised to determine whether other acts evidence that is being offered under OEC 404(4) is either explicitly, or by inference, evidence of character and whether propensity reasoning is at play. That is so, because evidence that goes to establish a person's character and that is offered solely to prove that a person acted in conformity with their character generally will have little or no cognizable probative value, and the risk that the jury may conclude improperly that the defendant had acted in accordance with past acts on the occasion of the charged crime will be substantial."

*Davis*, 372 Or at 635-36 (internal quotation marks omitted).

B.  *Facts and Proceedings Below*

In a forensic examination of defendant's cell phone, detectives located a large number of pornographic videos. A list was compiled of the titles and source websites of the

videos, indicating incest-themed content, including titles that specifically suggested incest between a man and his daughter.

In pretrial motions, defendant filed a motion *in limine* to exclude prior bad acts evidence and the state filed a motion to admit evidence of defendant's sexual interest in children.[10] The state argued that the evidence was admissible under OEC 404(3) as non-propensity evidence to prove defendant's sexual purpose toward K, because it demonstrated his sexual interest in children, which was probative of the sexual purpose element of the charges for first-degree sexual abuse and luring a minor. The state argued that, although the evidence was prejudicial, it was not unfairly so, because it was not more inflammatory than the statements of K herself describing the abuse she experienced, and would help to explain why defendant raped and sexually abused his daughter. The state also asserted that the evidence was admissible under OEC 404(4) as pure propensity evidence to establish that defendant acted with a sexual purpose. Defendant, on the other hand, argued that, even if the evidence had some relevance to the sexual purpose behind the acts, sexual purpose was not a significant issue in the case due to the nature of the alleged acts, and argued that the unfairly prejudicial impact of the evidence significantly outweighed any probative value.[11]

The court ruled that the evidence was admissible and made the following findings:

> "With regard to the internet searches on Defendant's phone for child porn websites such as Incestvidz.com and the others that have been identified by the parties, that motion is denied. This is probative of Defendant's sexual interest in children, especially those from his own family, something that is not shared by most individuals.

---

[10] The motions addressed additional categories of evidence, including evidence of uncharged conduct toward K; defendant's convictions for statutory rape and failure to register as a sex offender in another state years earlier; and allegations of sexual behavior toward one of his sons. The court's rulings on those other categories of evidence are not before us in this appeal.

[11] The parties made numerous other legal arguments that are not applicable given the changing legal landscape in the wake of *Davis*.

"And the sexual interest proved Defendant's intent and sexual purpose in allegedly committing the charged crimes on his younger daughter, the evidence is prejudicial only because it is so probative. It is not unfairly so. While it has a significant cringe factor, that is because it is probative and because it is unusual and against the norms of society. The probative value is not substantially outweighed by the danger of unfair prejudice.

"Prohibiting the use of the names of the websites would detract significantly from the probative value because the descriptors are directly related to an interest in children including from the same family. The probative value of those descriptors is not substantially outweighed by the danger of unfair prejudice. This is especially true given Defendant's initial statements to detectives that he \* \* \* didn't have any porn on his phone and his subsequent min-imization that he did do some searches, but that they were sites where the participants were screened to be over 18 years of age because he doesn't pay attention to child porn."

Following defendant's request that the court clarify whether the evidence was being admitted under OEC 404(3) or OEC 404(4) the court stated:

"It doesn't matter, and I'm not going to go down that road. I feel like you've unnecessarily made it way more complicated [than] it needs to be. I think actually that it's under both depending on the purpose for which it's being offered, and I identified at least three, if not four, different purposes for which it's being offered.

"And the reason that I don't think it makes a difference, because I think you're wrong in that you've imported into the [*State v. Williams*, 357 Or 1, 346 P3d 455 (2015)] or the [*State v. Baughman*, 361 Or 386, 393 P3d 1132 (2017)]—I don't remember which decision, this idea that it's a differ-ent balancing test. It's not. It's the same balancing test. So to me it doesn't matter."

On appeal, defendant challenges the court's findings regarding relevance and asserts that the purposes identified by the court all stem from propensity reasoning—namely, that because defendant was interested in incest-themed pornography, he had a propensity to fetishize incest and therefore was more likely to have acted in conformity with that character trait by committing incestual acts against K.

Defendant further argues that the limited probative value of the evidence was far outweighed by the danger of unfair prejudice. The state argues that defendant's sexual interest in children and incest is relevant and admissible under OEC 404(4), even if it relies on an underlying inference about his character, and that the high probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.

C.   *Analysis*

We begin with relevance. Evidence is relevant under OEC 401 if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevance determinations under OEC 401 "can yield only one correct answer; evidence is relevant or it is not," and accordingly, we "review determinations of relevance for errors of law." *State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999).

The evidence of incest-themed pornography on defendant's phone was relevant to the charges at hand. We first pause to acknowledge that the evidence discovered on defendant's phone does not appear to involve actual minors, let alone someone as young as K, although some of the evidence purports to depict sexual acts involving adults and teenagers. Some of the titles could reasonably be construed to indicate content involving adult men and their minor daughters, both pre- and post-pubescent. The fact that the content does not appear to involve minors as participants reduces the reasonableness of any inference regarding defendant's sexual interest in children that might be drawn from the evidence.

However, the evidence certainly is relevant to demonstrating defendant's sexual interest in taboo familial couplings, particularly between fathers and daughters. In *Martinez II* we stated:

"In cases in which the state must prove that the defendant acted for a sexual purpose, Oregon case law has allowed evidence of a defendant's prior acts or interactions with children, when it is offered to establish that the

defendant has a sexual interest in children, because it is relevant and probative to the issue of whether the defendant committed the act for a sexual purpose."

*Martinez II*, 341 Or App at 16. Defendant's sexual purpose was an element of many of the charged crimes. Although the other acts evidence here did not consist of prior interactions with children, it did show a particular specific sexual interest. Similar to the sexual interest in children that was at issue in *Williams*, 357 Or at 23, a sexual interest in family members (of any age) is not something that most adults have. Defendant's particular sexual interest in incest "would not, alone, establish that defendant acted on that interest in the charged circumstances, but it is a fact that is logically relevant to that issue." *Id.* Therefore, the evidence is relevant under OEC 401.

In accordance with *Davis*, we next examine whether the evidence was either "explicitly, or by inference, evidence of character and whether propensity reasoning is at play." *Davis*, 372 Or at 635. In *Martinez I*, we concluded that evidence of a defendant's taboo sexual interests is character evidence, and that an argument that the defendant's sexual predisposition makes it more likely that they acted with a sexual purpose in committing the charged offenses employs propensity reasoning. *Martinez I*, 335 Or App at 655-56 & n 9. Here, the trial court explicitly accepted the state's proffered purpose for the evidence, which was to show defendant's sexual interest in children from his own family, and thus to make it more likely that he acted with a sexual purpose in allegedly committing the crimes against K. Essentially, such an argument employs the reasoning that, because a person has deviant sexual interests, they are more likely to engage in deviant sexual acts, with a sexual purpose. While that rationale is distinct from the reasoning involved when the other acts consist of actual abuse of a child on a previous occasion, both employ propensity reasoning.

The trial court also noted that the evidence was probative in light of defendant's initial statements to detectives that he did not have any pornography on his phone, and subsequent minimization "that he did do some searches, but that they were sites where the participants were screened

to be over 18 years of age because he doesn't pay attention to child porn." The state did not rely on that basis as a theory of relevance. As discussed above, the pornography located on defendant's phone was not alleged to be child pornography, so it does not have relevance to refuting defendant's assertion that he does not pay attention to child pornography. Given the state's stated purpose for the evidence, the relevance was primarily character-based.

Having concluded that the relevance of the evidence relied almost exclusively on propensity reasoning, we turn to the trial court's exercise of its discretion in conducting OEC 403 balancing. As we recently explained in *Martinez II*, 341 Or App at 21-22, it is not necessarily impermissible to admit propensity evidence regarding the sexual interests of the defendant in a child sexual abuse case, where the sexual purpose element of the crime is a fact that is in dispute; the issue becomes "the extent to which the evidence was offered to establish that [the] defendant's actions, *if they indeed occurred*, were done for a sexual purpose[,] * * * versus merely to establish that [the] defendant is a bad person and thus was more likely to engage in the charged conduct." (Emphasis added.).

We conclude that the trial court abused its discretion in admitting the spreadsheet and video evidence for the purpose of demonstrating defendant's character as a person who is sexually interested in children from his family. The court noted that "the evidence is prejudicial only because it is so probative" but that it was "not unfairly so." The court further commented that "[w]hile it has a significant cringe factor, that is because it is probative and because it is unusual and against the norms of society."

The stated relevance is propensity based, and as the Supreme Court stated in *Davis*,

"evidence that goes to establish a person's character and that is offered solely to prove that a person acted in conformity with their character 'generally will have little or no cognizable probative value, and the risk that the jury may conclude improperly that the defendant has acted in accordance with past acts on the occasion of the charged crime will be substantial.'"

*Davis*, 372 Or at 635-36 (quoting *Williams*, 357 Or at 20). The risk that the jury would draw impermissible character inferences from the evidence showing that defendant had such taboo sexual interests was high. As the trial court itself noted, the evidence had a significant "cringe factor" and was "against the norms of society." The titles of the videos and source websites are incredibly inflammatory, covering a range of taboo sexual scenarios. However, as defendant emphasized, his possession of the pornography, although certainly contrary to prevailing social norms, was not illegal, and did not explicitly demonstrate a sexual interest in children. Yet we find it difficult to imagine that the jury would not have considered the evidence to cast defendant as a generally bad person, and therefore more likely to have engaged in the acts as charged, as opposed to considering the evidence purely to decide whether, *if* defendant engaged in the charged acts, he did so with a sexual purpose.

This case is distinguishable from *Martinez II* in multiple ways. In that case, the defendant was charged with first-degree sexual abuse of his 11-year-old stepdaughter, based on massaging the victim in a sexual manner. *Martinez II*, 341 Or App at 11-12. The state sought to present evidence that the defendant had opened the closed door to the bedroom shared by his daughter and two stepdaughters at times when he knew the girls would be undressed, to show that he had a sexual interest in young females. *Id.* We acknowledged that the relevance of the evidence—to show that, if the defendant committed the charged acts, he did so with a sexual purpose based on his sexual interest in young females—employed propensity reasoning. *Id.* at 20-22. However, we concluded that, even though it was less probative of sexual purpose than evidence of prior convictions for sexual crimes against children, the evidence in that case was "less likely to inflame jurors" or cause them to convict on an improper basis than evidence that was properly admitted in other cases. *Id.* at 23-24.

In contrast, here, although the evidence of defendant's pornography preferences was more probative of defendant's sexual interests than the mere act of entering a room where children were likely to be undressing, it was not

explicitly probative of an interest in prepubescent children, or the specific child in question, as was the case in *Martinez II*. The evidence was also significantly more inflammatory, given the content of the video titles and website names. We conclude that the trial court abused its discretion in admitting the spreadsheet and video evidence for the purpose that it did.

Finally, we conclude that the improper admission of the other acts evidence was not harmless error. As noted above, the risk that the jury would draw impermissible character inferences from the evidence was high, given the taboo nature of the video titles and websites and what the trial court deemed a "significant cringe factor." The court gave no limiting instruction as to appropriate and inappropriate uses of the evidence, and the prosecutor emphasized it during closing argument, asserting that defendant looking at incest pornography around the time of K's disclosure was one of the "core facts of the case." In summarizing the evidence, the prosecutor pointed the jury to the list of videos, noting that they were all downloaded in the two days before defendant was arrested, and stating that the jury could review the videos themselves, but stating: "I'm not encouraging you to look at 48 videos of incest-related porn. *** If you want to satisfy your curiosity about that, it's the most uncomfortable thing I can imagine as a member of a jury, watching something like this, but this whole trial is uncomfortable." Finally, in rebuttal closing, one of the last points the prosecutor made in arguing that defendant had committed the crimes he had been charged with was that "he's a person who's interested in incest." We cannot conclude that "there is little likelihood" that the evidence affected the jury's verdict on both the sex crime charges and the witness tampering charges. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) (error requires reversal unless reviewing court can conclude that there was little likelihood that the trial court's ruling affected the jury's verdict).[12]

---

[12] Our ruling does not foreclose the possibility that the trial court may be able to admit some portion or form of the evidence in a manner that comports with OEC 403. Absent a concrete offer of proof by the state, accompanied by a specific explanation of the theory of admissibility, we are not in a position to evaluate the merits of such an approach.

## IV.   CONCLUSION

We conclude that defendant's phone was lawfully seized and searched, and that the trial court therefore did not err in denying defendant's motion to suppress all evidence found on the phone. However, the trial court abused its discretion in assessing the prejudicial effect versus the probative value of the pornographic videos that were found on defendant's phone. Because we remand for a new trial, we need not reach defendant's third assignment of error, regarding testimony from the state's expert witness, as the foundation, testimony, and objections may arise in a different posture upon retrial.

In Case No. 19CR22915, convictions on Counts 2, 6, 10, 11, 12, and 13 reversed and remanded; otherwise affirmed. In Case No. 19CR58662, reversed and remanded. In Case No. 19CN03969, affirmed.