No. 547          June 18, 2025          343

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MICHAEL WAYNE CHAMPAGNE,
*Defendant-Appellant.*

Clackamas County Circuit Court
19CR60073; A175059

On remand from the Oregon Supreme Court, *State v. Champagne*, 372 Or 812, 558 P3d 847 (2024).

Katherine E. Weber, Judge.

Submitted on remand December 04, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Morgen E. Daniels, Deputy Public Defender, Oregon Public Defense Commission, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Michael A. Casper, Assistant Attorney General, filed the answering brief for respondent. Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Michael A. Casper, Assistant Attorney General, filed the supplemental brief for respondent.

Before Ortega, Presiding Judge, Hellman, Judge, and Landau, Senior Judge.

LANDAU, S. J.

Affirmed.

**LANDAU, S. J.**

This case returns to us on remand from the Oregon Supreme Court. The issue on remand is whether, in this prosecution for various sexual offenses against two children, the trial court erred in admitting evidence that defendant had previously abused a third child. In our original opinion, we concluded that the trial court did not err in admitting that evidence. Defendant petitioned for review. While that petition was pending, the Supreme Court decided *State v. Davis*, 372 Or 618, 553 P3d 1017 (2024) (*Davis III*).[1] In that case, the court elaborated its existing analysis of the admissibility of evidence of "other acts" under OEC 404(4). It then vacated our original opinion in this case and remanded for reconsideration in light of its decision in *Davis III*. On reconsideration, we conclude that the trial court did not err in admitting the evidence of defendant's prior sexual abuse of the third child. We therefore affirm.

## I.   BACKGROUND

The relevant facts are not in dispute. The state charged defendant with multiple sexual offenses, including first-degree sexual abuse, ORS 163.427. All the offenses arose out of defendant's alleged abuse of his granddaughter, A, and his step-granddaughter, O. The children were between the ages of six and nine when the offenses occurred. The evidence was that defendant would begin by giving the girls back rubs or "belly rubs" and then progress to digital penetration, oral sexual contact, and sexual intercourse. Before trial, the state filed a motion to admit testimony of B that defendant had sexually abused her as well, some years earlier, as well as evidence that defendant ultimately pleaded guilty to two counts of first-degree sexual abuse, based on B's reports of abuse. The state asserted that the testimony was relevant and admissible as nonpropensity evidence under OEC 404(3). According to the state, the

---

[1] As we explain below, at issue in that case was the admissibility of certain other acts evidence. The trial court admitted the evidence. We reversed and remanded. *State v. Davis*, 290 Or App 244, 414 P3d 887 (2018) (*Davis I*). On remand, the trial court again concluded that the evidence was admissible. We again reversed. *State v. Davis*, 319 Or App 737, 511 P3d 10 (2022) (*Davis II*). The Supreme Court allowed the state's petition for review and, in *Davis III*, reversed our decision in *Davis II* and remanded to this court for further proceedings.

evidence was admissible to show defendant's sexual purpose in committing the acts against A and O and, as such, had significant probative value in that it showed a consistent and repeated pattern of inappropriate conduct around children. In the alternative, the state argued that the evidence of defendant's interest in sexually abusing children was admissible under OEC 404(4), because it was relevant to prove that he acted with that purpose with respect to A and O. Defendant responded that the evidence was relevant but not for a "noncharacter purpose." He argued that, if the court allowed B to testify, it would be "impossible *** to have a fair trial in this matter."

Judge Rastetter heard the motion and agreed with the state. He found that B's testimony was relevant under OEC 404(3) for the nonpropensity purpose of showing defendant's sexual interest in children and that he acted with a sexual purpose. The judge also concluded that the evidence was admissible under OEC 403, because it had significant probative value that was not outweighed by the danger of unfair prejudice. Judge Rastetter additionally found that B's testimony was admissible under OEC 404(4) because it was offered for the propensity purpose of showing defendant's sexual interest in children and that he acted on that interest. The trial court separately concluded that the probative value of the evidence for those purposes was not outweighed by the danger of unfair prejudice.

At trial, the issue was again raised before Judge Weber. She concluded that Judge Rastetter's pretrial ruling "clearly allows [B] to testify," but that it also "clearly requires me to severely limit what may be presented through [B's] testimony." Judge Weber ruled that B would be allowed to testify about her "age, the basis of her relationship, the number of times [defendant abused her], the specific circumstances, how it was initiated and progressed, that it was always the same type [of conduct]."

B's testimony was brief. She said that she and defendant's daughter were friends between kindergarten and the sixth grade, and that sometimes she would spend the night at defendant's house. She testified that defendant had abused her on more than ten occasions during that time.

She said he would begin by giving her a back rub and then proceed to rub her breasts and penetrate her. The state also introduced evidence of defendant's prior conviction.

At the conclusion of the trial, the court instructed the jury that it could consider B's testimony for limited purposes only:

"You cannot find [defendant] guilty based on a finding that he has a propensity or a disposition to sexually abuse children.

"Making decision[s] based on propensity is prohibited under Oregon law. The State is required to prove beyond a reasonable doubt each crime that the State has alleged. Each crime requires proof that [defendant] committed each alleged act. Each crime also requires proof that [defendant] acted knowingly and for a sexual purpose when he committed each act.

"In considering the evidence in this case, you must give individual consideration to each count. You cannot use evidence relating to [defendant's] past conviction or conduct for the purpose of concluding that because [defendant] sexually abused [B] in 2002, he is guilty of sexually abusing [A] or [O] in this case.

"You may take into account evidence that [defendant] has a sexual interest in children to determine whether he was acting on that interest on the occasion of each charge— each charge involving [A] and [O]."

On appeal, defendant argued that the trial court erred in admitting the testimony of his sexual abuse of B under either OEC 404(3) or OEC 404(4). The state abandoned its initial contention that the evidence was admissible under OEC 404(3), but it continued to assert that the evidence was properly admitted under OEC 404(4). In response, defendant acknowledged that the evidence was relevant under OEC 404(4) as propensity evidence. He argued that the evidence nevertheless was inadmissible because the trial court had failed to properly balance the relevance of that evidence against its potential prejudice. He asserted that the court, in conducting that balancing inquiry, had failed to distinguish between the relevance of the evidence for nonpropensity and propensity purposes.

We affirmed. *State v. Champagne*, 325 Or App 76, 527 P3d 1067 (2023). We concluded that the record demonstrated that the trial court understood the state's two distinct theories of admissibility—as nonpropensity evidence under OEC 404(3) and as propensity evidence under OEC 404(4). *Id*. at 82-83. We further concluded that the trial court did not abuse its discretion in weighing the probative value of the evidence for its propensity purpose as against the danger of prejudice in admitting it. *Id*. at 83.

In the meantime, the Oregon Supreme Court decided *Davis III*. In that case, the defendant tackled a jogger from behind and dragged her off the sidewalk to a nearby secluded ditch. The victim vigorously fought back, and the defendant ran away. The defendant was ultimately charged with, among other things, first-degree sexual abuse. 372 Or at 621-22.

To prove the necessary element of intent, the state offered evidence that, in the weeks before the attack, the defendant had left handwritten notes on the cars of two female strangers, graphically expressing his desire to engage in violent sexual intercourse with the two women. Defense counsel objected. The trial court concluded that the evidence of the letters was admissible propensity evidence under OEC 404(4), because the letters demonstrated the defendant's interest in violent, nonconsensual sex with strangers, and they explained his purpose in attacking the victim. The court further found that the probative value of the letters was not substantially outweighed by the danger of unfair prejudice in admitting them. *Id*. at 622-24. The Supreme Court affirmed the trial court's decision. *Id*. at 643.

On remand, the parties dispute the impact of the court's decision in *Davis III* on our disposition of this case. Defendant contends that, although the court upheld the admissibility of the other acts evidence in that case, its reasoning substantially altered the analysis that applies under OEC 404(4). Defendant reads *Davis III* to stand for a categorical principle that, evidence that "primarily or substantially derive[s] its relevance from character-based propensity reasoning" must be excluded. Defendant argues that in

this case, the testimony of B as to defendant's earlier sexual abuse, which the state offered to show his purpose in abusing A and O, "is purely propensity evidence," is "highly inflammatory," and should have been excluded.

The state on the other hand argues that the Supreme Court has long held that "admitting propensity [evidence] in child sex cases, including to prove the charged act, can be constitutionally permissible," and nothing in *Davis III*—which did not involve child sexual abuse—suggests that the court intended to overrule its prior decisions and depart from that longstanding principle. Accordingly, the state argues, *Davis III* does not require reversal in this case.

## II.   ANALYSIS

### A.   *Analytical Framework*

OEC 404(3) prohibits the use of "other crimes, wrongs or acts" to show a character trait and that a person is likely to have acted in conformity with that character trait. OEC 404(4), however, supersedes that prohibition in criminal cases. It provides that, in criminal actions, "evidence of other crimes, wrongs or acts by the defendant is admissible," so long as it is relevant and admitting it would not violate the state or federal constitution. OEC 404(4).

In *State v. Williams*, 357 Or 1, 346 P3d 455 (2015), the Oregon Supreme Court addressed the extent to which the state or federal constitution would prohibit the admission of evidence offered under OEC 404(4). The court concluded that the Due Process Clause of the Fourteenth Amendment requires that evidence offered under OEC 404(4) is admissible only if, under OEC 403, the probative value of the evidence is not substantially outweighed by the prejudicial effect of admitting it. The court explained that balancing process in the following terms:

> "When a party objects *** to 'other acts' evidence offered under OEC 404(4), a trial court must engage in the balancing anticipated by OEC 403. At one end of the spectrum, 'other acts' evidence that is offered for nonpropensity purposes—i.e., to prove motive, intent, identity, or lack of mistake or accident—generally will be admissible as long as

the particular facts of the case do not demonstrate a risk of unfair prejudice that outweighs the probative value of that evidence. At the other end of the spectrum, * * * when 'other acts' evidence 'goes only to character and there are no permissible inferences the jury may draw from it,' it is more likely that the evidence will be excluded. Such evidence generally will have little or no cognizable probative value and the risk that the jury may conclude improperly that the defendant had acted in accordance with past acts on the occasion of the charged crime will be substantial."

*Williams*, 357 Or at 19-20 (citation omitted).

At issue in *Williams* was the admissibility of evidence that the defendant had possessed two pairs of children's underwear at the time he had allegedly committed first-degree sexual abuse involving a five-year-old child. The trial court had admitted the evidence on the ground that it was relevant to show that in touching the child victim, the defendant had acted with a sexual purpose. *Id*. at 4. On review, the defendant argued that the trial court erred, because the evidence was not relevant. *Id*. Applying the foregoing analysis, the court in *Williams* concluded that the evidence was relevant for a purpose other than establishing the defendant's character:

"[T]here is a slim but distinct difference between using the underwear to establish defendant's character and propensity to act accordingly, and offering that evidence to establish defendant's sexual purpose. First, in this case, defendant's sexual purpose is an element of the charged crimes. The state did not offer the evidence to establish that defendant committed the charged acts; it offered the evidence to prove an element of the charged crimes—defendant's sexual purpose. Second, the state was required to prove that defendant had acted with a sexual desire that was aroused or gratified by contact with children. Because most adults do not have such a desire, the state was entitled to prove that defendant is an adult who does. The fact that defendant has a sexual interest in children would not, alone, establish that defendant acted on that interest in the charged circumstances, but it is a fact that is logically relevant to that issue."

*Id*. at 23.

*Williams* thus addressed how relevancy is to be addressed under OEC 404(4), and it concluded that, in the context of a child sexual abuse case, other acts evidence may be relevant to establish a defendant's "sexual purpose." But *Williams* did not address how courts should conduct the balancing of probative value against the potential for prejudice—specifically, whether that entails "traditional" balancing under OEC 403 or something more as a matter of due process. The court addressed that issue in *State v. Baughman*, 361 Or 386, 402, 393 P3d 1132 (2017), and concluded that traditional OEC 403 balancing is what OEC 404(4) requires.

Under OEC 403, that traditional balancing entails determining whether relevant evidence should be excluded because "its probative value is substantially outweighed by the danger of unfair prejudice." As the Supreme Court explained in *State v. Lawson/James*, 352 Or 724, 757, 291 P3d 673 (2012), "probative value" refers to the "measure of the persuasiveness that attaches to a piece of evidence." And "unfair prejudice" refers to "an 'undue tendency to suggest a decision on an improper basis, commonly, although not always, an emotional one.'" *State v. Naudain*, 368 Or 140, 156, 487 P3d 32 (2021).

The Supreme Court addressed more particularly how to balance the probative value of other acts evidence and the danger of unfair prejudice in admitting such evidence in *Davis III*. As we noted, in that case, the court determined that the trial court did not err in admitting evidence of two letters that the defendant had left for other women as evidence of the defendant's intent in assaulting the victim.

The court began by recapitulating its case law on the subject—in particular, in *Williams* and *Baughman*. *Davis III*, 372 Or at 633-35. The court explained that, while OEC 404(3) provides that evidence to prove "character" or propensity is inadmissible, OEC 404(4) provides that such evidence may be admissible in criminal cases if the probative value of the evidence is not substantially outweighed by the danger of prejudice in admitting it. 372 Or at 634-35. Citing *Williams*, the court said that, even though OEC 404(4) supersedes OEC 404(3) in criminal cases, the extent

to which evidence would have been admissible under OEC 404(3) still may have a "significant effect" on the balancing of the probative value of the evidence against its potential for prejudice. *Id*. The court quoted the portion of *Williams* in which the court had described other acts evidence as comprising a "spectrum," with one end describing evidence that is relevant for nonpropensity purposes and the other end involving evidence that is relevant only to prove a defendant's character. *Id*. at 636. The problem there, the court said, is that in *Williams* it did not explain what types of evidence fall between the two ends of the spectrum. It follows, the court said, that "the middle of that spectrum consists of evidence where character reasoning may be implicit to some degree." *Id*.

The court concluded that the letters in dispute amounted to "direct evidence of [the] defendant's thoughts, desires, and intentions" and not evidence of any particular character or propensity. *Id*. at 638. The court explained: "[t]he primary inference created by the content of the notes is the noncharacter-based inference that [the] defendant—having repeatedly, and within a short period, intentionally and deliberately expressed, without ambiguity, his intent to violently assault strangers—possessed the same continuous intent when he assaulted the victim in this case mere weeks later." *Id*. at 639. Such intent, the court noted, was an element of the offense with which the defendant had been charged. *Id*. at 640. The court added that, "even if the notes are arguably reliant on some degree o[n] character, that degree is marginal, and character certainly is not the primary or substantial source of their relevance." *Id*. at 641. The court acknowledged that, as such, the evidence was also prejudicial, but not unfairly so. *Id*.

There appears to be some tension between *Davis III* and the court's earlier decision in *Williams*. The court in *Davis III* said that, in *Williams*, it had "described as classically 'impermissible' evidence that 'goes only to character,' where 'there are no permissible inferences the jury may draw from it.'" *Id*. at 636 (quoting *Williams* 357 Or at 20). That is not quite what the court had said in *Williams*, which is that "when 'other acts' evidence 'goes only to character and there

are no permissible inferences the jury may draw from it,' it is *more likely* that the evidence will be excluded." *Williams*, 357 Or at 20 (emphasis added). The word "impermissible" does not appear in *Williams*, certainly not with respect to character evidence in child sexual abuse cases. To the contrary, the court said "in a prosecution for child sexual abuse, the admission of 'other acts' evidence to prove character and propensity under OEC 404(4) depends on whether the risk of unfair prejudice outweighs the probative value of the evidence under OEC 403. That determination must be made on a case-by-case basis." *Id*.

In a similar vein, in evaluating the letters at issue in *Davis III*, the court noted that "even if the notes are reliant on some degree o[n] character, that degree is marginal, and character certainly is not the primary or substantial source of their relevance." 372 Or at 641. An arguable implication there is that, if character had been "the primary or substantial source" of the relevance of the letters, they would have been categorically inadmissible. Again, that appears to short-circuit the OEC 403 balancing process that *Williams* suggested applies to such character or propensity evidence in child sex abuse cases.

We confronted some of the tension in the case law in *State v. Martinez*, 315 Or App 48, 499 P3d 856 (2021) (*Martinez I*). In that case, the defendant was charged with first-degree sexual abuse of a child, based on his conduct in entering the child's room while she was sleeping and groping her. *Id*. at 49. At trial, the state offered testimony of another victim, the daughter of the defendant's cousin, whom the defendant had previously sexually abused over the course of years. *Id*. at 49-50. The testimony included graphic details of the abusive conduct, culminating in the other victim giving birth to the defendant's child. *Id*. at 50. The state argued that the testimony was admissible under OEC 404(3) as evidence of the defendant's sexual motive in touching the victim and that the touching had a sexual purpose. In the alternative, the state cited *Williams* and argued that the testimony was admissible under OEC 404(4). *Id*. at 50-51. The trial court admitted the testimony under OEC 404(3). *Id*. at 51. The court instructed the jury that it could

use that testimony for the purpose of determining "whether that evidence demonstrates that the defendant has a sexual interest in children and whether the defendant acted on that interest as to the charged offense." Following the defendant's conviction, we reversed and remanded, concluding that the testimony was propensity evidence and needed to have been evaluated under OEC 404(4). *Id.* at 56-57.

On remand, the trial court concluded that the testimony as to the defendant's prior sexual abuse of another child was probative of the defendant's sexual purpose in touching the victim and that the probative value was not substantially outweighed by the potential for prejudice in admitting it. *State v. Martinez*, 335 Or App 643, 648-49, 559 P3d 907 (2024), *rev den*, 373 Or 713 (2025) (*Martinez II*). We again reversed and remanded. We noted that our analysis of the issue was informed by the Supreme Court's then-recent decision in *Davis III*. After a detailed recapitulation of the court's analysis in *Davis III*, we concluded that the Supreme Court's decision set forth the following framework for admitting other acts evidence under OEC 404(4):

> "First, the court should parse the other 'acts' into constituent parts, where possible, to aid in determining the degree of character present in the proponent's theory of relevancy. Second, the court should consider the probative value of each constituent part of the evidence to determine whether its relevance relies on character reasoning expressly or by implication. Third, the court, in its discretion, may admit evidence that does not primarily or substantially derive its relevance from character-based propensity reasoning. Finally, whether a court acts within its permissible range of discretion to admit such evidence may depend on whether the court took action to mitigate any unfair prejudice, such as redacting inflammatory details, limiting the state's use of the evidence, and instructing the jury on how it may consider the evidence."

*Martinez II*, 335 Or App at 654-55.

Turning to the evidence at issue, as required in *Davis III*, we parsed the evidence into its constituent components. First, as to the testimony about the defendant's prior abusive conduct, we noted that it was offered to show an element of the charged offense—that is, that defendant had

touched the victim for the "sexual purpose" of arousing or
gratifying sexual desire. *Id*. at 655 (quoting ORS 163.427(1)
(a)). We concluded that such evidence was "highly probative"
of his sexual interest in young girls generally, making it
more probable that he had a sexual interest in the victim
and that he acted with sexual purpose in touching her. *Id*.
at 657. Second, we considered the evidence of the "context"
of the abuse—specifically, the evidence of defendant's family
relationship with the earlier victim and the fact that he had
fathered a child by her. As to the evidence of the defendant's
relationship with the earlier victim, we concluded that "[i]
t is difficult to discern" how that family relationship "sup-
ports the proposition that [the] defendant acted with a sex-
ual purpose in the charged offense." *Id*. at 658. Instead, we
concluded, "it is more readily apparent that it establishes
[the] defendant's propensity" to abuse children. *Id*. And as
for the evidence of the pregnancy, we concluded that such
evidence was minimally relevant, as it tended more to bol-
ster the credibility of the earlier victim than it did to estab-
lish the defendant's sexual interest in children. *Id*. at 659.

We suggested that "[i]t may therefore seem inescap-
able to conclude, under the *Davis III* framework, that even
the highly probative prior abusive conduct evidence 'primar-
ily or substantially' derives its relevance from defendant's
character and, therefore, that the trial court abused its dis-
cretion in declining to exclude that evidence." *Id*. But, we
added, the application of *Davis III*, "is not that straightfor-
ward." *Id*.

To begin with, the evidence was probative of sexual
purpose, which was an element of the charged offense, and
in *Davis III*, the Supreme Court concluded evidence offered
for that purpose was admissible. *Id*. at 660. Aside from that,
*Davis III* was not a child sexual abuse case. We recalled
that, in *Williams*, the Supreme Court had said that child
sexual abuse cases are treated differently:

> "*Williams* held that due process requires OEC 403 bal-
> ancing of other acts evidence admitted under OEC 404(4),
> but also recognized that, because the extent of due pro-
> cess protections can depend on 'historical practice,' the
> exclusion of other acts evidence involving character and

propensity reasoning in child sexual abuse cases is not so deeply rooted as to be fundamental. Thus, while *Williams* suggested, and *Baughman* reiterated, that propensity evidence may be categorically inadmissible in criminal cases other than child sexual abuse prosecutions under the Due Process Clause, those cases made clear that propensity evidence may be admissible in child sexual abuse cases after OEC 403 balancing when it has cognizable probative value to an issue other than the defendant's character and propensity."

*Id*. We finally noted that *Davis III* also suggested that the prejudicial effect of character evidence might be mitigated by limiting instructions. *Id*. at 661.

All of that, we observed, "makes it difficult to reconcile" *Davis III* and *Williams*. Nevertheless, we concluded that reversal was required in *Martinez II* because the trial court instructed the jury that it could consider the evidence not only to establish his sexual interest in children, but also to determine whether the defendant had "acted on" that interest as to the charged offense. *Id*. at 661. Moreover, we said, the additional evidence about the defendant fathering the earlier victim's child was minimally relevant, and it was unlikely that a limiting instruction could mitigate the prejudice resulting from the admission of that inflammatory evidence. *Id*. at 661-62. We added that our holding did not foreclose the admissibility of the prior abusive conduct evidence "with a correct limiting instruction that narrows the use of that evidence to proving defendant's sexual purpose as to the element of sexual contact. *Id*. at 662.

B.   *Application*

With the foregoing case law in mind, we return to the parties' arguments. As we have noted, defendant reads *Davis III* broadly to require the exclusion of evidence that derives its probative value "primarily or substantially from character." Certainly, there is some phrasing in *Davis III* that could be read to support such a reading. But, as we observed in *Martinez II*, *Davis III* was not a child sexual abuse case, and giving such a broad, categorical reading to the Supreme Court's decision in that case would put the decision squarely at odds with *Williams*.

The state stakes out an equally broad position, but for the opposite conclusion. According to the state, "propensity evidence is admissible under OEC 404(4) to prove conduct." That reading of the case law, however, runs afoul of this court's decision in *Martinez II*. The state admits as much, arguing that *Martinez II* was simply wrongly decided. We decline to reconsider that decision here.

The state argues that, even if *Martinez II* correctly concluded that propensity evidence may not be admitted to prove that conduct occurred, the fact remains that in this case the evidence of defendant's prior child abuse was not offered to prove that he engaged in any particular conduct. Rather, it was offered to show his sexual purpose, which is an element of the charged offense. In that regard, the state argues, the evidence in this case is admissible, consistent with *Williams*, *Davis III*, and *Martinez II* as well. That argument presents a much closer question.

We review the evidence in accordance with the analytical framework set out in *Davis III*. First, under *Davis III*, we parse the other acts evidence into constituent parts to evaluate the probative value of each part. 372 Or at 637. As in *Martinez II*, we begin by dividing the evidence into components: (1) the abusive conduct and (2) the context of the abuse.[2]

We proceed then to the second step of the *Davis III* analysis, concerning the probative value of the evidence in dispute. *Id*. at 634. Beginning with the evidence of defendant's prior abuse, we note that the evidence goes directly to an element of the charged offense—that is, defendant's sexual purpose. Sexual abuse in the first degree requires proof of "sexual contact," ORS 163.427(1)(a), which is defined as touching of sexual or intimate body parts "for the purpose of arousing or gratifying the sexual desire of either party," ORS 163.305(5). In that light, B's testimony is highly probative of defendant's sexual interest in young girls generally, thus making it more likely that he acted with sexual purpose when he touched A and O.

---

[2] Although the trial court also admitted a copy of defendant's judgment of conviction relating to B's allegations of abuse, the parties' arguments focus exclusively on the probative value and unfair prejudice of B's testimony. We therefore follow suit.

Turning to the contextual evidence, B briefly mentioned that she was friends with defendant's daughter, that sometimes B would stay over at defendant's house, and that it was on those occasions that her abuse occurred. By itself, that evidence seems minimally relevant. But at least in conjunction with the other evidence of defendant's acts, it could be said to show that, when defendant has access to children at his home, he sexually abuses them—an impermissible propensity inference that defendant engaged in the charged conduct.

Taking our cue from *Martinez II*, we also consider at this stage of the analysis the risk of unfair prejudice in admitting the evidence in dispute. Certainly, in the case of the evidence of defendant's prior abuse, there is a risk of unfair prejudice. There is an undeniable element of propensity reasoning at play with respect to such evidence, even when it is offered to prove sexual purpose. *See Martinez II*, 335 Or App at 659 (risk of prejudice is "necessarily present" in admitting evidence of prior child sexual abuse). As for the contextual evidence, there is similarly a risk of unfair prejudice, although it must be said that this evidence here is not nearly the sort of inflammatory contextual evidence that was at issue in *Martinez II* and so poses a lesser risk in that regard.

Third, under *Davis III*, we are to determine whether the evidence, taken as a whole, primarily or substantially derives its relevance from character-based propensity reasoning. In this case, the evidence taken as a whole primarily derives its relevance from its tendency to show defendant's sexual purpose in touching A and O. And, as we have just noted, there is an undeniable element of propensity reasoning involved in asserting that, because a defendant acted with sexual purpose in the past, it is more likely that he also did so in the charged instance.

That does not necessarily mean that the evidence is categorically inadmissible, however. *Williams* said that there is a "slim" but important distinction between offering evidence of prior child sexual abuse to establish, on the one hand, that the abuse occurred and, on the other hand, that the defendant engaged in the conduct with sexual purpose.

357 Or at 23. Even if the latter may be characterized as "propensity evidence," its admissibility depends on whether the risk of unfair prejudice outweighs the probative value of the evidence. *Id*. at 20. That determination must be made on a "case-by-case basis." *Id*.

As we concluded in *Martinez II*, we do not understand *Davis III* to have disturbed *Williams* on that important point. 335 Or App at 661-62. We therefore turn to the fourth and final step in the *Davis III* analysis, namely, whether the trial court took any steps to mitigate the risk of unfair prejudice from the admission of such evidence. *Davis III*, 372 Or at 641. Here, the trial court took pains to limit the use of the evidence of defendant's prior abuse of B. The court instructed the jury that "[y]ou cannot find [defendant] guilty based on a finding that he has a propensity or a disposition to sexually abuse children." The court further explained that "[y]ou cannot use evidence relating to [defendant's] past conviction or conduct for the purpose of concluding that because [defendant] sexually abused [B] in 2002, he is guilty of sexually abusing [A] or [O] in this case." The court told the jury that it could consider B's testimony about defendant's sexual interest in children only "to determine whether he was acting on that interest on the occasion of each charge—each charge involving [A] and [O]." In light of the trial court's limiting instructions, we cannot say that it abused its discretion in admitting the evidence of the prior sexual abuse, even with the contextual evidence that was not patently inflammatory.

*Martinez II* is not to the contrary. There the court instructed the jury that it could consider evidence of the defendant's earlier child sexual abuse to determine whether he "acted on" that interest in the charged instances. 335 Or App at 661. And we held that the court erred in doing so. *Id*. at 661-62. But in *Martinez II*, the trial court did not deliver the sort of limiting instructions that the court in this case did. And we noted that our decision in that case did not foreclose that the trial court could have discretion to admit the other acts evidence of the defendant's prior abusive conduct "with a correct limiting instruction that narrows the use of that evidence to proving [the] defendant's sexual purpose

as to the element of sexual contact." *Id*. at 662. In this case, the trial court delivered the needed limiting instructions, repeatedly telling the jury that it could not consider the evidence of defendant's prior abuse to determine whether he committed the charged acts. Moreover, we noted in *Martinez II* that the contextual evidence in that case was sufficiently inflammatory that limiting instructions would not likely mitigate the potential for unfair prejudice. *Id*. at 661. There is no such inflammatory contextual evidence in this case.

Under the circumstances, and after considering the Supreme Court's decision in *Davis III*, we conclude that the trial court did not err in admitting evidence of defendant's prior sexual abuse of B.

Affirmed.