728 July 9, 2025 No. 613

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

NOAH JONATHAN POWERS,
fka Noah Harouff,
*Defendant-Appellant.*

Marion County Circuit Court
18CR51360; A172142

On remand from the Oregon Supreme Court, *State v. Powers*, 372 Or 812 (2024).

Sean E. Armstrong, Judge.

Submitted on remand December 4, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and David O. Ferry, Deputy Public Defender, Oregon Public Defense Commission, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Michael A. Casper, Assistant Attorney General, filed the opening brief for respondent. On the supplemental brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Solicitor General, and Michael A. Casper, Assistant Attorney General.

Before Ortega, Presiding Judge, Shorr, Judge, and Hellman, Judge.

SHORR, J.

Affirmed.

**SHORR, J.**

This case is before us on remand from the Oregon Supreme Court, which vacated and remanded our prior decision, *State v. Powers*, 323 Or App 553, 523 P3d 1112 (2023) (*Powers I*), for reconsideration in light of *State v. Davis*, 372 Or 618, 553 P3d 1017 (2024). *State v. Powers*, 372 Or 812, 558 P3d 847 (2024). *Davis*, issued after our decision in *Powers I*, provided specific guidance on how to evaluate the admissibility of other acts propensity evidence under OEC 403. The issue before us on remand is whether, in light of *Davis*, we correctly concluded that the trial court acted within its permissible discretion when not excluding evidence of defendant's prior acts of sexual abuse under OEC 403. Applying *Davis* and our most recent case law on the issue, we reach the same conclusion as we did previously. Accordingly, we affirm.

## BACKGROUND

Our previous decision set forth the facts, so we do not repeat them in full. We limit our discussion to the facts relevant to the evidentiary issue currently on appeal.

Defendant was charged with four sexual offenses involving his minor stepdaughter L: one count of first-degree unlawful sexual penetration, one count of first-degree sodomy, one count of attempted first-degree rape, and one count of first-degree sexual abuse. Prior to trial, the state moved to admit evidence, under OEC 404(3) and OEC 404(4), of defendant's two prior convictions from 2006 for first-degree attempted sexual abuse of H, a stepdaughter in a previous relationship. The state also sought to admit H's testimony as to the underlying facts of the abuse. The trial court issued an order granting the state's motion in part and denying it in part. The court excluded H's testimony about the underlying facts under OEC 403. But it allowed the state to admit court-certified copies of the convictions and for H to testify as to her age and relationship to defendant at the time of the offenses. The court first found the evidence admissible under OEC 404(3) to prove sexual intent, and that the probative value was not substantially outweighed by the danger of unfair prejudice under OEC 403. The court also

determined that "the proffered bad acts would all be admissible under OEC 404(4) as evidence that the defendant has a sexual interest in children. The court [did] not reach a different analysis for admissibility for that [propensity] purpose under OEC 403 and incorporate[d] its analysis above."

At trial, H testified that defendant was her adopted father, and that he had pleaded guilty to attempted first-degree sexual abuse committed against her when she was 13 or 14 years old.

Next, L testified that defendant sexually abused her from the ages of eight to 11, beginning on a camping trip. She testified that the abuse continued at home when her mother was away. She said that he tried to put his fingers in her vagina, and they were "partially in, but not completely." More than once, she said that defendant would try to put his penis in either her butt or vagina, he would sit on her back and play with his penis, and he would often have pornography on the TV during the abuse. Defendant testified in his own defense, denying that he had ever touched L for a sexual purpose. He said that he "roughhoused" with L while they had pajamas on and acknowledged that his clothed penis may have contacted L's clothed back but denied any sexual purpose in the contact. Before the jury began deliberating, the court gave a limiting instruction, instructing the jury that it must first determine if defendant had touched a sexually intimate part of L; "then, and only then" could the jury consider evidence of defendant's prior bad acts. Further, that conduct could "only be used for the limited purposes of its bearing, if any, on whether [defendant] acted with a sexual purpose." The jury found defendant guilty on all counts, and defendant appealed.

In *Powers I*, we first concluded that the evidence was not admissible under OEC 404(3) for a nonpropensity purpose. 323 Or App at 563. Next, we considered whether the evidence was nevertheless admissible under OEC 404(4) and OEC 403. *Id.* at 564. Defendant argued that the trial court's OEC 403 balancing under its OEC 404(4) analysis failed to appreciate the different prejudice and probative value of propensity-based evidence when it simply incorporated its previous OEC 403 analysis conducted under a

nonpropensity theory. *Id*. We concluded that the trial court expressly considered the propensity nature of the evidence under OEC 404(4), and the fact that it incorporated its previous OEC 403 balancing did not demonstrate otherwise. *Id*. at 565. Defendant also maintained that because of its significant risk of unfair prejudice, the evidence did not withstand OEC 403 balancing. To determine that issue, we considered the factors identified by the Ninth Circuit in *United States v. LeMay*, 260 F3d 1018 (9th Cir 2001), *cert den*, 534 US 1166 (2002), which we have previously used in determining whether a trial court abuses its discretion in admitting evidence of uncharged sexual misconduct in a prosecution for sex crimes. The *LeMay* factors include: (1) the similarity of the acts; (2) the temporal proximity of the uncharged acts to the charged acts; (3) the frequency of the prior acts; (4) the existence or nonexistence of intervening circumstances; and (5) the state's need for the evidence. *Id*. at 1028. We determined that the acts were very similar and that the state had a great need for the evidence. *Powers I*, 323 Or App at 567. Therefore, although other *LeMay* factors pointed in the other direction, we concluded that the trial court was within its discretion to admit the evidence under OEC 403. *Id.*

Defendant petitioned the Supreme Court for review of, among other things, our rejection of his assignment of error regarding the admission of evidence of his prior sexual abuse of H. The Supreme Court allowed review, vacated our decision without discussion, and remanded for reconsideration in light of its decision in *Davis*. In *Davis*, the Supreme Court established a framework for evaluating the admissibility of propensity evidence under OEC 403. Accordingly, on remand we consider only whether the Supreme Court's *Davis* framework changes our previous conclusion. For the reasons explained below, we conclude that it does not.

## LEGAL FRAMEWORK

OEC 404(4) provides that, in criminal cases, evidence of "other crimes, wrongs or acts by the defendant" is generally admissible if relevant. Unlike OEC 404(3), which prohibits the use of propensity-based evidence, OEC 404(4) contains no such prohibition. Traditionally, propensity evidence is evidence used "to prove that a person has a propensity

to engage in certain types of behavior and that the person acted in conformance with that propensity on a particular occasion." *State v. Skillicorn*, 367 Or 464, 476, 479 P3d 254 (2021). In *Skillicorn*, the Supreme Court further clarified that propensity evidence includes evidence that "requires the factfinder to employ propensity reasoning"—in other words, where "the chain of logical relevance connecting the evidence to the fact it is proffered to prove relies on an inference relating to a person's character or propensities." *Id.* (internal quotation marks and brackets omitted). We confronted that issue in the context of a child sexual abuse case in *State v. Martinez*, 315 Or App 48, 499 P3d 856 (2021) (*Martinez I*). We explained that evidence of the defendant's prior sexual abuse of another child constituted propensity evidence that needed to be evaluated under OEC 404(4). *Id.* at 56-57. When that case returned to us on appeal after remand, we further explained that "evidence of a defendant's prior sexual misconduct involving a different victim offered to prove the defendant's sexual purpose in the charged conduct is propensity evidence because it relies on propensity reasoning." *State v. Martinez*, 335 Or App 643, 656, 559 P3d 907 (2024), *rev den*, 373 Or 713 (2025) (*Martinez II*). Propensity evidence is admissible against a criminal defendant under OEC 404(4) if the evidence is relevant under OEC 401 and withstands OEC 403 balancing.[1] *Davis*, 372 Or at 634-35.

The Supreme Court has described the admissibility of evidence under OEC 404(4) and OEC 403 as a spectrum, where at "one end of the spectrum, 'other acts' evidence that is offered for nonpropensity purposes *** generally will be admissible." *State v. Williams*, 357 Or 1, 19, 346 P3d 455 (2015). At the other end of the spectrum, other acts evidence that goes only to character—evidence whose probative value depends on propensity-based reasoning—with no permissible nonpropensity inferences the jury may draw from it, is generally excluded because such evidence "generally will have little or no cognizable probative value." *Id.* at 19-20.

---

[1] Defendant does not argue on appeal that the evidence was not relevant under OEC 401; we therefore focus on whether the evidence was admissible under OEC 403. OEC 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

In *Williams*, a child sexual abuse case, the court differentiated between offering evidence to prove the charged act and using it to establish the defendant's sexual purpose, specifically, his sexual interest in children. *Id.* at 23. There, the court concluded that the latter was a permissible purpose under OEC 404(4).[2] *Id.*

*Davis* was the first case to define the middle of the spectrum as

> "evidence where character reasoning may be implicit *to some degree*, or where, despite a noncharacter purpose being offered by the proponent of the evidence, a jury or factfinder could perceive the evidence as relying on character and action in conformity with character as its source of relevance to the trial."

*Davis*, 372 Or at 636 (emphasis in original). In *Davis*, the Supreme Court set forth a framework for evaluating the admissibility of propensity evidence, particularly that which falls in the middle of the spectrum. *Id.* at 637. We summarized that framework in *Martinez II*, 335 Or App at 654-55:

> "First, the court should parse the other 'acts' into constituent parts, where possible, to aid in determining the degree of character present in the proponent's theory of relevancy. Second, the court should consider the probative value of each constituent part of the evidence to determine whether its relevance relies on character reasoning expressly or by implication. Third, the court, in its discretion, may admit evidence that does not primarily or substantially derive its relevance from character-based propensity reasoning. Finally, whether a court acts within its permissible range of discretion to admit such evidence may depend on whether the court took action to mitigate any unfair prejudice, such as redacting inflammatory details, limiting the state's use of the evidence, and instructing the jury on how it may consider the evidence."

The evidence in *Davis* involved "highly offensive, sexually explicit notes" that the defendant had left for two women whom he did not know in the weeks prior to the charged

---

[2] The court in *Williams* expressly did not consider the admissibility of the evidence under OEC 403, because the defendant had not challenged that aspect of the trial court's decision. 357 Or at 23 ("Defendant does not contend that the trial court erred in its OEC 403 analysis, and we therefore do not consider that issue on review.").

crime. *Davis*, 372 Or at 620. The court ultimately admitted the evidence because, even if "reliant on some degree of character, that degree is marginal, and character is certainly not the primary or substantial source of their relevance." *Id.* at 641. Moreover, *Davis* emphasized that a court can mitigate the unfair prejudice of even "highly prejudicial" evidence by redacting the most incendiary wording, limiting the state's use of the evidence, and giving the jury a limiting instruction. *Id.*

*Martinez II* provides helpful guidance on applying the *Davis* framework to a child sexual abuse case. The defendant in *Martinez II* was convicted of first-degree sexual abuse against B, a friend of the defendant's daughter. 335 Or App at 644. The defendant appealed the trial court's decision to admit evidence, in the form of testimony, that the defendant had previously sexually abused a different minor child, C, who was the daughter of the defendant's cousin. *Id.* at 648-49. We first confirmed that "evidence of a defendant's prior sexual misconduct involving a different victim offered to prove the defendant's sexual purpose in the charged conduct is propensity evidence because it relies on propensity reasoning." *Id.* at 656.

Next, to determine "the *degree* of character reasoning present in the state's theory of relevancy," we parsed the evidence into conceptual parts: "(1) the abusive conduct, and (2) the context of the abuse." *Id.* at 657 (emphasis in original). We then considered the probative value of each conceptual part. *Id.* at 657-58. With respect to the abusive conduct, we determined that it was "highly probative of [the defendant's] sexual interest in young girls generally," making it more probable that he "acted with a sexual purpose in committing the offense" against B. *Id.* at 657. We then turned to the context of the abuse, which consisted of C's familial relationship to the defendant, the setting of the abuse in the defendant's home with others sleeping nearby, and the fact that he had fathered a child with C. *Id.* at 658. We concluded that it was "difficult to discern" how the context supported the proposition that the defendant acted with a sexual purpose in the charged offense, given that B was not related to the defendant and there was no indication that the setting

was relevant to the defendant's sexual gratification. *Id.* As for the contextual evidence that the defendant had fathered C's child, we determined that it was not particularly probative as to sexual purpose where C already testified in detail about the abusive conduct. *Id.* at 658-59. Moreover, the contextual facts supported "an extraordinarily negative character inference about defendant as a person." *Id.* at 658. Therefore, the contextual evidence constituted negative propensity evidence with "little to no cognizable probative value." *Id.* at 662.

Because the contextual evidence had such low probative value in establishing the defendant's sexual purpose in the charged offense, we determined that it was inadmissible under OEC 403. *Id.* at 662. Turning to the abusive conduct, we concluded that the evidence likely fell "somewhere in the middle of the OEC 403 balancing spectrum by virtue of it having cognizable probative value as to whether defendant acted with a sexual purpose and therefore subjected B to sexual contact, an element of the charged offense." *Id.* at 660. However, we did not reach a conclusion on the admissibility of the abusive conduct under OEC 403 because we determined that the trial court's limiting instruction did not properly limit the jury's use of the evidence to establish whether the defendant "acted with a sexual purpose in the charged offense." *Id.* at 661. Instead, the instruction allowed the jury to use the evidence to determine whether the defendant "*acted on*" his sexual interest in children. *Id.* (emphasis in original). We therefore remanded, without foreclosing the possibility that, with a proper limiting instruction, the trial court may have discretion on remand to admit the evidence of the defendant's prior abusive conduct toward C. *Id.* at 662.

Finally, we also noted that *Williams* "made clear that propensity evidence may be admissible in child sexual abuse cases after OEC 403 balancing" because "the exclusion of other-acts evidence involving character and propensity reasoning in child sexual abuse cases is not so deeply rooted as to be 'fundamental.'" *Id.* at 660. Since *Davis* and applying the principles in *Davis* and *Williams*, we have recently upheld the admission of propensity-based evidence in child sexual abuse cases subject to OEC 403 balancing.

*State v. Martinez*, 341 Or App 10, 24, ___ P3d ___ (2025) (*Martinez III*);[3] *State v. Champagne*, 341 Or App 343, 358, ___ P3d ___ (2025).

## ANALYSIS

In light of the *Davis* framework, we now reconsider our previous analysis of whether the trial court erred when it determined that state's evidence was not inadmissible under OEC 403. First, as we confirmed in *Martinez II*, evidence offered to prove a defendant's sexual interest in children is a theory of relevance that relies on propensity reasoning. 335 Or App at 655. Therefore, we consider its admissibility under OEC 404(4) and OEC 403. Second, to the extent that we previously relied on the *LeMay* factors to determine admissibility under OEC 403, we recognize that that did not conclude the analysis. Instead, under *Davis*, when conducting OEC 403 analysis, we must consider the probative value of the evidence and determine whether the evidence derives its relevance primarily or substantially from character-based propensity reasoning. *Davis*, 372 Or at 641-42.

Under the analytical framework set out in *Davis*, we begin by parsing the evidence into constituent parts: (1) the abusive conduct, and (2) the context of the abuse. In this case, the abusive conduct consists of defendant's two prior convictions for attempted first-degree sexual abuse and H's testimony that the offenses occurred when she was 13 or 14 years old, which together establish defendant's prior sexual misconduct against another child. The context of the abuse consists of H's testimony that she was defendant's adopted daughter at the time of the offenses.

Our next step is to consider the probative value of each constituent part of the evidence. *Martinez II*, 335 Or App at 654. Here, the abusive conduct is "highly probative of defendant's sexual interest in young girls generally, thus making it more likely that he acted with sexual purpose" in the charged incident. *Champagne*, 341 Or App at 356. That evidence is probative of a disputed issue, defendant's

---

[3] *Martinez III* is unrelated to *Martinez I* and *II* and involves a different defendant.

sexual purpose. On the other hand, the probative value of
the contextual evidence arises primarily out of its relevance
to prove an ultimate and impermissible propensity infer-
ence, that defendant sexually abuses children who live in
his home.[4] *See id.* at 357 (stating that the evidence "could be
said to show that, when defendant has access to children at
his home, he sexually abuses them"). Furthermore, the evi-
dence, whether viewed in conceptual parts or as a whole, is
highly prejudicial precisely because it risks painting defen-
dant as a sexual predator who targets his own stepchildren
who live in his home. However, as discussed further on in
this opinion, the evidence may nevertheless be admissible
in this child sexual abuse case in light of the trial court's
efforts to mitigate the risk of unfair prejudice.

      In determining the probative value of the evidence,
we must also consider "whether its relevance relies on char-
acter reasoning expressly or by implication." *Martinez II*,
335 Or App at 654. Here, the state offered the evidence to
prove defendant's sexual purpose.[5] We have explained that
such evidence relies on character-based "propensity reason-
ing, *i.e.*, that the defendant's sexual predisposition makes
it more likely that they acted with a sexual purpose in the
charged offense." *Id.* at 656 n 9. We also note that unlike
in *Davis* where parsing the evidence demonstrated both
character reasoning and another noncharacter-based line
of reasoning, in this case, the evidence relies on character-
based propensity reasoning regardless of how it is parsed.
*Davis*, 372 Or at 637 n 11. However, the Supreme Court has
held that, in a child sexual abuse case, "there is a slim but
distinct difference between using [evidence] to establish [a]
defendant's character and propensity to act accordingly,
and offering that evidence to establish [a] defendant's sex-
ual purpose." *Williams*, 357 Or at 23. In *Williams*, the court

---

    [4] Defendant did not argue before the trial court or before us that defendant's
familial relationship to the victims gave rise to a separate prejudice in this case.

    [5] The charge of first-degree sexual abuse requires that the state prove that
defendant acted with a sexual purpose. *See* ORS 163.427(1)(a) (requiring proof of
"sexual contact," which is defined as touching of sexual or intimate body parts
"for the purpose of arousing or gratifying the sexual desire of either party,"
ORS 163.305(5)). The other charges of first-degree unlawful sexual penetration,
first-degree sodomy, and attempted first-degree rape, do not. ORS 163.411; ORS
163.405; ORS 163.375; ORS 161.405.

ultimately determined the evidence was admissible to prove the defendant's sexual purpose. *Id.* We have also recognized that sexual purpose is a permissible—although propensity-based—ultimate inference. *Martinez II*, 335 Or App at 655.

Nevertheless, it would appear that after *Davis*, as a general rule, we can affirm the admission of propensity evidence under OEC 403 only if it does not primarily or substantially derive its relevance from character. *Davis*, 372 Or at 642. However, we have concluded that, in the specific context of a child sexual abuse case, evidence of a defendant's prior bad acts against a different victim, although it "relies primarily upon propensity reasoning," is not necessarily impermissible. *Martinez III*, 341 Or App at 21. We explained that *Davis*, when read in conjunction with *Martinez II* and *Williams*, "permit[s] evidence of a defendant's prior acts or interactions with children when offered to show that the defendant's alleged act in a child sexual abuse case, if true, was committed for a sexual purpose, subject to OEC 403 balancing." *Id.* at 16; *see also Champagne*, 341 Or App at 358 (explaining that, in a child sexual abuse case, the admissibility of propensity evidence of prior abuse against another child depends on OEC 403 balancing). We therefore turn to whether the trial court abused its discretion in admitting the evidence under OEC 403.

Here, we also consider the trial court's significant efforts to mitigate the unfair prejudice. In this case, the court minimized unfair prejudice by excluding all testimony about the underlying conduct, allowing only the fact of the convictions themselves and H's limited testimony as to her age and relationship to defendant. Although that evidence risked some unfair prejudice, it is not nearly as inflammatory as the contextual evidence in *Martinez II*, where the trial court allowed evidence that the defendant's prior abuse resulted in him fathering a child with the victim. *Martinez II*, 335 Or App at 658-59. The trial court also instructed the jury that it could only consider evidence of defendant's past behavior if it first concluded that defendant had touched a sexually intimate part of L. The court properly limited the jury's consideration of the prior bad act evidence such that it could "only be used for the limited purposes of its bearing, if any, on whether [defendant] acted with a sexual purpose." *Cf.*

*Martinez II*, 335 Or App at 661 (the trial court's instruction improperly allowed the jury to consider whether the defendant *acted on* his sexual interest in children); *see also State v. Oxford*, 336 Or App 637, 643, 561 P3d 679 (2024) (concluding that a limiting instruction can operate to adequately address the inflammatory nature of evidence of a defendant's prior deviant sexual conduct).[6] Finally, we consider that historical exclusions regarding propensity evidence do not necessarily extend to child sexual abuse cases. *Williams*, 357 Or at 17.

Considering all of those factors, we conclude that the trial court did not abuse its discretion in admitting evidence of defendant's prior convictions and H's limited testimony. *See Champagne*, 341 Or App at 358 (no abuse of discretion to admit evidence, in the form of testimony and convictions, of prior sexual abuse of another child in a child sexual abuse case where the court gave an appropriate limiting instruction); *State v. Terry*, 309 Or App 459, 465, 482 P3d 105 (2021) (no abuse of discretion to admit the defendant's prior conviction for a sexual offense against another child in a child sexual abuse case); *but cf. State v. McGee*, 341 Or App 237, 254-55, ___ P3d ___ (2025) (abuse of discretion to admit evidence of explicit incest-themed pornography possessed by the defendant because they were "incredibly inflammatory" and did not demonstrate a sexual interest in children).

In sum, the evidence had probative value as to whether defendant acted with a sexual purpose when he subjected L to the charged offenses. Although the introduction of the evidence risked unfair prejudice, the trial court took significant steps to mitigate that prejudice. On balance, we conclude that the trial court was within the range of its discretion in concluding that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice in light of the court's significant limiting instruction that limited the evidence so it could only be used to determine whether defendant acted with a sexual purpose.

Affirmed.

---

[6] As noted, defendant's sexual purpose was a disputed issue at trial. Although defendant denied ever sexually touching L, he also contended that their "rough-housing" may have been misconstrued by L. The state had other evidence of defendant's sexual interest in L, but defendant's sexual purpose was a disputed issue at trial.